**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

**No. 94-40302**

---

**FRANKLIN ATKINSON,**

**Plaintiff-Appellant,**

**VERSUS**

**DENTON PUBLISHING COMPANY,**

**Defendant-Appellee.**

---

Appeal from the United States District Court
For the Eastern District of Texas

---

May 15, 1996

Before REYNALDO G. GARZA, DeMOSS, and BENAVIDES, Circuit Judges.

DeMOSS, Circuit Judge:

For 21 years Franklin Atkinson was the circulation manager for the Denton Record-Chronicle, a paper owned by Denton Publishing Company. On December 30, 1991, at age 58, Atkinson was terminated. Atkinson filed this lawsuit, claiming that he was unlawfully discharged in that (1) he was discharged because of his age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623, (2) his discharge breached a written employment contract, (3) the Paper's actions rose to the level of intentional infliction of emotional distress, and (4) he was terminated because he refused to commit an illegal act. The district court issued an order granting

Denton Publishing's motion for summary judgment as to each of Atkinson's claims, and denying Atkinson's cross-motion for summary judgment. Atkinson appeals the district court's disposition of his age discrimination, breach of contract and intentional infliction of emotional distress claims, arguing that summary judgment was inappropriate because genuine issues of material fact exist as to each of those claims.[1] Atkinson also appeals several rulings made by the district court prior to summary judgment, which he claims impermissibly prejudiced his ability to present probative summary judgment evidence. We first address the propriety of the district court's procedural rulings.

## PROCEDURAL RULINGS

Atkinson argues that the district court abused its discretion by (1) refusing to allow Atkinson to propound interrogatories in excess of those allowed by the court's local rules; (2) refusing to compel production of personnel files for many of Denton Publishing's past and present employees; and (3) refusing to allow Atkinson additional time to obtain his expert's report. Atkinson further maintains that the district court abused its discretion by (1) relying upon incompetent summary judgment evidence, and (2) by quashing Atkinson's amended motion for summary judgement. The district court's disposition of these contested discovery and procedural matters is reviewed only for an abuse of discretion. **McKethan v. Texas Farm Bureau**, 996 F.2d 734, 738 (5th Cir. 1993),

---

[1]Atkinson makes no argument on appeal related to his claim that Denton Publishing terminated him because he refused to commit an illegal act.

2

<u>cert. denied</u>, 114 S. Ct. 694 (1994); **Mayo v. Tri-Bell Indus., Inc.**, 787 F.2d 1007, 1012 (5th Cir. 1986) (discovery rulings are reversed only if they are "arbitrary or clearly unreasonable"). After careful consideration of the complete record, we find no abuse of the considerable discretion afforded the district court as to these matters. Only two of the issues raised merit further discussion.

## 1. Interrogatories

Atkinson initially filed this suit in the Northern District of Texas because he believed both parties were residents of Tarrant County. Because both parties were in fact residents of Denton County, the district court *sua sponte* transferred the case to the Eastern District of Texas. Once assigned to the Eastern District, the case was placed on Track 3 pursuant to the Eastern District's Civil Justice Expense and Delay Reduction Plan.[2] Track 3 allows 15 interrogatories, in addition to the mandatory disclosures required by the Federal Rules of Civil Procedure. Atkinson moved to expand the allowed number of interrogatories from 15 to 31 in order to accommodate two sets of interrogatories served on the defendant with his complaint while the case was still pending in the Northern District of Texas. The district court denied his motion.

On appeal, Atkinson claims that Denton Publishing's responses to the required interrogatories was with reference to the mandatory disclosure requirements, such that he received no additional benefit from the defendant's limited responses. In addition,

---

[2]The Civil Justice Expense and Delay Reduction Plan was adopted pursuant to the Civil Justice Reform Act of 1990, 28 U.S.C. § 471 *et seq.*

Atkinson claims that the district court abused its discretion by not requiring Denton Publishing to answer the remaining interrogatories, which addressed issues central to Denton Publishing's defenses and would have helped Atkinson develop competent summary judgment evidence.

Denton Publishing answered Atkinson's first set of interrogatories with 18 responses. The 18 responses included a total of 36 subparts. Only seven of those responses are framed with any reference to the information disclosed as part of the mandatory discovery requirements. Atkinson did not complain that the district court lacked authority to limit discovery, or that Denton Publishing had failed to comply with the requirement for 15 responses. Instead, Atkinson argued solely that Denton Publishing should be compelled to respond to the remaining interrogatories. Atkinson did not explain why additional interrogatories were necessary, beyond stating that the information related to Denton Publishing's defenses in some unspecified way. Moreover, the text of the propounded but refused interrogatories does not appear in the record.

Given the scope of Denton Publishing's multiple-part responses, and the absence of a compelling reason to expand discovery, it was not an abuse of the district court's discretion to deny Atkinson's motion to expand the number of allowed interrogatories.

## 2. Personnel Files

Atkinson also moved to compel production of the Denton Publishing personnel files for 12 designated past or present employees of Denton Publishing, plus personnel files for an additional 47 former employees who were voluntarily or involuntarily separated from the company at the age of 40 or older. The district court ordered production of the requested personnel files for in camera inspection. After examining many of the requested files, the court ordered production of one file in its entirety and excerpts from a second file.

Atkinson argues generally that the files had the potential for establishing a pattern and practice of age discrimination, which would be admissible circumstantial evidence of discrimination. But Atkinson's complaint alleges that he was terminated because his general manager, who valued his performance, was replaced by Bill Patterson, a younger man who discriminated against Atkinson and other employees on the basis of age. Many of the personnel files requested related to employees who left Denton Publishing long before Bill Patterson became general manager. In light of the district court's in camera review, and the lack of any nexus between Atkinson's complaint and the employees terminated prior to Bill Patterson's promotion, the district court did not abuse its discretion by denying Atkinson's motion to compel production of the remaining files.

## SUMMARY JUDGMENT

This Court reviews the grant of summary judgment *de novo*, applying the same standard as the district court. **Bodenheimer v. PPG Indus., Inc.**, 5 F.3d 955, 956 (5th Cir. 1993). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). There is no genuine issue of material fact if the evidence is such that, drawing all reasonable inferences in favor of the non-movant, Atkinson, a reasonable jury could not return a verdict in his favor. **Anderson v. Liberty Lobby, Inc.**, 106 S. Ct. 2505, 2510-11 (1986).

## 1. Age Discrimination Claim

In reviewing summary judgment, this Court must decide whether Atkinson produced facts which, if believed, would lead a reasonable jury to conclude that it was more likely than not that Denton Publishing terminated Atkinson because of his age. **Rhodes v. Guiberson Oil Tools**, 75 F.3d 989, 994 (5th Cir. 1996) (en banc); **Bodenheimer v. PPG Indus., Inc.**, 5 F.3d 955, 958 n.8 (5th Cir. 1993). To conduct that review, we have historically employed the familiar **McDonnell Douglas** framework. **McDonnell Douglas v. Green**, 93 S. Ct. 1817, 1824 (1973); but see **O'Connor v. Consolidated Coin Caterers Corp.**, 116 S. Ct. 1307, 1309 (1996) (leaving open the question of whether **McDonnell Douglas** applies in ADEA cases).

Under **McDonnell Douglas**, the plaintiff bears the initial burden to demonstrate a prima facie case by a preponderance of the evidence. **Rhodes**, 75 F.3d at 992. Once established, the prima

6

facie case serves to create a rebuttable presumption of unlawful discrimination. **Id**. at 993. The employer can rebut that presumption with evidence that, if believed by the trier of fact, would support a finding that unlawful discrimination did not motivate the employer's action. **Id**. At that point, a plaintiff can avoid summary judgment if "the evidence taken as a whole (1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer and (2) creates a reasonable inference that age was a determinative factor in the actions of which plaintiff complains. The employer, of course, will be entitled to summary judgment if the evidence taken as a whole would not allow a jury to infer that the actual reason for the discharge was discriminatory." **Id**. at 994.

The district court concluded and it is not seriously disputed that Atkinson demonstrated a prima facie case of unlawful discrimination: (1) he was discharged; (2) he was qualified for the position; (3) at age 58, he was within the protected class; and (4) he was replaced by someone outside of the protected class -- a 38-year-old worker. Denton Publishing effectively rebutted the presumption of discrimination with evidence that Atkinson was terminated for insubordination after he refused to accept a transfer to the Lewisville News and the Grapevine Sun, two smaller newspapers also owned by Denton Publishing. Denton Publishing further responded with evidence that the decision to transfer Atkinson was made because Atkinson failed to complete specific assignments delegated to him within the time period proscribed, and

7

because the paper was experiencing increasing competition for subscribers after the demise of a large daily paper in its market.

Atkinson produced controverting evidence which created genuine issues of fact as to whether each of Denton Publishing's asserted reasons for his discharge were in fact pretextual. Denton's primary reason for the discharge, Atkinson's refusal to accept a transfer, was disputed by Atkinson's evidence that he was terminated before he was offered any transfer, and evidence that Denton Publishing immediately withdrew the transfer offer when Atkinson attempted to accept it. Denton Publishing claimed that the transfer was motivated by Atkinson's failure to complete assignments and increasing competition for subscribers. Atkinson responded with summary judgment evidence that all assignments had been completed on a timely basis, or would have been, if he had not been terminated. Moreover, Atkinson was never given any negative performance evaluations or warnings abut his performance, although it was the company's policy to do so before termination. In fact, in the month prior to his termination, Atkinson was told that he was "doing a good job." Atkinson also offered evidence that the demise of the large daily Dallas paper did not significantly impact Denton Publishing's market in a negative way, and that he had offered numerous ideas to counter any competitive effect, which had all been refused by his employer.

Atkinson also offered additional evidence of age discrimination, based upon which a reasonable jury could conclude

8

that he was more likely than not discharged because of his age. See **Rhodes**, 75 F.3d at 994-95; **Moore v. Eli Lilly & Co.**, 990 F.2d 812, 816 (5th Cir. 1993), cert. denied, 114 S. Ct. 467 (1993). Atkinson offered evidence that general manager Bill Patterson preferred to deal directly with Atkinson's younger, less experienced subordinates. Atkinson also offered evidence that Patterson told another Denton Publishing employee that he preferred to solve problems directly with the younger employees because Atkinson had "old ideas and old ways." Atkinson also offered evidence that Patterson gave younger employees pay raises, when equally entitled older employees were denied raises. Finally, Atkinson's deposition identifies other employees in the protected age class who were terminated and replaced by younger workers after Bill Patterson was promoted to general manager.

Taken as a whole, Atkinson's summary judgment evidence creates a fact issue on the issue of whether age was a determinative factor in Denton Publishing's decision to terminate Atkinson. Although we express no opinion on the ultimate merits of Atkinson's claim, summary judgment at this stage was therefore improper.

## 2. Breach of Contract

In August 1991, Atkinson and Denton Publishing entered into a "Profit Sharing Bonus Agreement." Under the terms of that agreement, Atkinson agreed to function as a circulation manager for Denton Publishing from August 1, 1991, until June 30, 1992. Denton Publishing agreed that Atkinson would be compensated $720 per week,

9

and in addition, would receive a profit sharing bonus calculated according to the terms of the agreement.

The district court found that the profit sharing agreement was an employment contract for the stated period. We agree that there is at least a fact question about whether the agreement formed a binding employment contract. The district court nonetheless concluded that summary judgment was appropriate because Atkinson committed the first material breach of the agreement by refusing the offer of transfer on the day of termination. The court reasoned that because the agreement did not limit Atkinson's service to a particular newspaper owned by Denton Publishing, Atkinson could not refuse the transfer without breaching the agreement. However, the position offered to Atkinson paid significantly less and did not include a profit sharing bonus. Perhaps more important is the fact that Atkinson contends he was terminated before any offer of transfer was made. Viewing the facts in a light most favorable to Atkinson, Denton Publishing's unilateral decision to terminate the agreement six months early, or alternatively, its unilateral attempt to modify the financial terms of the agreement without new consideration was a material breach that preceded Atkinson's alleged refusal of the transfer. Atkinson's summary judgment evidence demonstrated that there remain genuine issues of material fact relating to his claim for breach of contract, and summary judgment was improper.

Nor do we agree, as the district court found in the alternative, that collateral estoppel bars Atkinson's claim for

10

breach of contract. Shortly after he was terminated, Atkinson filed a claim before the Texas Employment Commission (TEC) under the Texas Payday Law[3] claiming his entitlement to a bonus according to the terms of the agreement. See Tex. Rev. Stat. Ann. art. 5155 § 5(f) (rules and procedures used by TEC in benefit determinations are used to make preliminary wage determinations under the Texas Payday Law). While this action was pending, the TEC issued a final determination that Atkinson was not entitled to a bonus under the agreement. Denton Publishing argues that the final TEC wage determination collaterally estops Atkinson from litigating his breach of contract claim, which is based upon the agreement.

Atkinson argues that TEC decisions do not have preclusive effect, citing Tex. Rev. Stat. Ann. art. 5221b-9(r), which states that findings made in a claim for benefits under the Texas Unemployment Compensation Act cannot be used as evidence in another proceeding not brought under the Act.[4] Denton Publishing responds that although article 5221b-9(r) prohibits the use of benefit determinations as collateral estoppel, it does not apply to preclude the use of wage determinations made by the TEC in subsequent litigation.

---

[3]Tex. Rev. Civ. Stat. Ann. art. 5155. The Texas Payday Law has been repealed and codified at Tex. Labor Code § 61.011 *et seq.* This opinion refers to that version of the Texas Payday Law applicable to Atkinson's claims.

[4]Tex. Rev. Stat. Ann. art. 5221b-9(r) was repealed and is now codified at Tex. Labor Code § 213.007. This opinion refers to the version of that statute applicable to Atkinson's claims.

11

The Texas legislature denied TEC benefit determinations preclusive effect because "[t]he adjudication process under the Texas Employment Compensation Act is geared to the disposal of a large number of cases in an expeditious manner." REPORT BY THE TEXAS HOUSE COMM. ON LABOR AND EMPLOYMENT RELATIONS, H.B. 813 (Mar. 26, 1991). Further, "[t]he mere possibility that collateral estoppel will be applied has the potential for bogging down the appeals process under the Texas Unemployment Compensation Act by protracted litigation where further litigation is contemplated in other forums involving the same facts and parties." **Id**. Both of those justifications for denying TEC findings preclusive effect apply equally when the TEC is making wage, rather than benefit, determinations. There are, however, no Texas cases addressing the issue of whether the statute prohibits the assertion of TEC wage determinations as collateral estoppel, and it is not necessary that we decide that issue in this case. If the statute is applicable, the TEC determination as to Atkinson's claim would not bar relitigation in this action. If the statute is not applicable, then the preclusive effect of the TEC determination is governed by Texas collateral estoppel principles. **Migra v. Warren City School District Bd. of Educ.**, 104 S. Ct. 892, 896 (1984). Under Texas law, collateral estoppel precludes relitigation of identical issues actually litigated in a prior action if: (1) the issue was fully and fairly litigated in the prior action; (2) the issue was essential to the decision in the prior case; and (3) the parties were cast as adversaries in the prior action. **J.M. Muniz, Inc. v.**

12

**Mercantile Texas Credit Corp.**, 833 F.2d 541, 544 (5th Cir. 1987) (citing **Bonniwell v. Beech Aircraft Corp.**, 663 S.W.2d 816, 818 (Tex. 1984)). Even if article 5221b-9(r) does not preclude relitigation of Atkinson's breach of contract claim, Atkinson's claim for breach of contract is not identical to the Texas Payday Law claim he filed with the TEC. Moreover, the adjudicative process afforded by the Texas Unemployment Compensation Act did not provide Atkinson with the opportunity to fully and fairly litigate all aspects of his claim. We therefore decline to give preclusive effect to the TEC determination.

**3. Intentional Infliction of Emotional Distress**

Under Texas law, the tort of intentional infliction of emotional distress has four elements: (1) intentional or reckless conduct; (2) that was extreme or outrageous; (3) that caused emotional distress; (4) that was severe. **Wornick Co. v. Casas**, 856 S.W.2d 732, 734 (Tex. 1993). Only conduct that is "so outrageous in character and so extreme in degree as to go beyond all possible bounds of human decency, and to be regarded as atrocious and utterly intolerable in a civilized community" will satisfy the second element of the tort of intentional infliction of emotional distress. **Dean v. Ford Motor Credit**, 885 F.2d 300, 306 (5th Cir. 1989); see also **Wornick**, 856 S.W.2d at 735. Further, it is the province of the court to determine whether a defendant's conduct may reasonably be regarded as extreme and outrageous enough to permit recovery. **Wornick**, 856 S.W.2d at 734.

13

Atkinson alleges that he was terminated without warning after long-service, that the company published false and defamatory reasons for his termination to people inside the company, that his superiors were disrespectful or rude to him during his employment and in the termination meeting, and that as a result he experienced "grief, shame, humiliation, anger, depression and nausea." Virtually all of Atkinson's allegations fall within the realm of an ordinary employment dispute, which is not actionable as an intentional infliction of emotional distress. As a matter of law, the alleged conduct is not extreme and outrageous. See **Ugalde v. W.A. McKenzie Asphalt Co.**, 990 F.2d 239 (5th Cir. 1993); **Johnson v. Merrell Dow Pharmaceuticals, Inc.**, 965 F.2d 31, 33-34 (5th Cir. 1992); **Wornick**, 856 S.W.2d at 735. The district court's grant of summary judgment as to Atkinson's intentional infliction of emotional distress claim was appropriate.

## CONCLUSION

For the foregoing reasons, the district court's orders (1) denying Atkinson's motion to expand the number of interrogatories; (2) denying, in part, Atkinson's motion to compel production of certain Denton Publishing personnel files; (3) denying, in part, Atkinson's motion to strike portions of Denton Publishing's summary judgment evidence; (4) quashing Atkinson's amended motion for summary judgement; and (5) denying Atkinson's motion to expand the time required to obtain a report from his expert on damages, are affirmed. The district court's grant of summary judgment in favor of the defendant, Denton Publishing, is AFFIRMED as to Atkinson's

14

intentional infliction of emotional distress claim. As to Atkinson's age discrimination and breach of contract claims, the district court's grant of summary judgment is VACATED, and the cause is REMANDED to the district court for further proceedings consistent with this opinion.

The district court's summary judgment is AFFIRMED in part, and VACATED AND REMANDED in part.