**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 98-60627
Summary Calendar

LAWRENCE W. SPARKS

Plaintiff-Appellant,

VERSUS

L.M. BERRY & COMPANY D/B/A
THE BERRY COMPANY,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Mississippi

(3:97-CV-699-BN)

June 8, 1999

Before DAVIS, DUHÉ, and PARKER, Circuit Judges:

PER CURIAM:[*]

Lawrence W. Sparks ("Sparks") filed a claim of age discrimination against his former employer, L.M. Berry & Company ("Berry"), under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, and under state law. The district court granted summary judgment in favor of Berry. Sparks appeals. We AFFIRM.

I.   FACTS AND PROCEDURAL HISTORY

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

-1-

Berry sells telephone directory advertisements for various telephone companies and their affiliated directory publishers in 23 states. Berry is the authorized sales agency for BellSouth Advertising & Publishing Corporation. BellSouth Advertising publishes the BellSouth Real Yellow Pages in Kentucky, Tennessee, Louisiana, Alabama, and Mississippi.

Sparks had worked in the field of directory advertising sales for a number of years. Prior to working for Berry, Sparks worked in South Carolina in the field of directory advertising sales. When Sparks wanted to move to Mississippi, his manager in South Carolina put Sparks in contact with one of Berry's regional managers, Pete Loungo ("Loungo"). Loungo contacted the Mississippi Division manager, Ty Gettis.

Berry hired Sparks on January 3, 1993 to work in Berry's Mississippi Division as a premise sales representative. At the time of his hiring, Sparks was 53 years old and the oldest person hired by Berry during the six year period from 1992 to 1997.

As a sales representative, Sparks demonstrated considerable success. Sparks had customers all over the State of Mississippi, met sales goals, and made money for the company. In 1996, Sparks won the President's Club award for the top salesman in the district. Sparks also placed second among all salespersons in Memphis, Tennessee for work in the second half of 1996.

Berry, however, had a number of problems with Sparks' behavior and his handling of company accounts. Sparks received counseling sessions with managers because of his behavior. Berry reprimanded

Sparks for violations of company procedures.  In addition, Sparks was suspended for one day from his employment for improper handling of company guidelines and procedures.  Further, Berry's customers reported a number of complaints with respect to the services that Sparks provided.

Berry contends that two serious ethical violations led to Sparks' termination.  First, Berry contends that Sparks forged initials on an account with CPS Pools and Spas ("CPS").  Shirley Draughn, ("Draughn"), an employee at CPS, alleged that Sparks forged her signature on a consumer tips addendum of CPS' paperwork. Sparks' manager, Jody Washington ("Washington"), made a site visit and spoke with Draughn about the signature.  Draughn stated that the signature had been initialed, but that she never initialed a signature.  Draughn could not locate CPS' copy of the consumer tips addendum.

Upon investigating the alleged forgery within Berry, Washington spoke with Cindy Harrell ("Harrell"), a clerk at Berry. Harrell explained that she asked Sparks about the consumer tips addendum to the CPS account because Sparks did not turn it in with his paperwork.  Harrell reported that Sparks said he would drive back to CPS, obtain the form, and give it to Harrell.  Sparks returned with the form fifteen minutes later. Washington, however, believed that the drive would have taken approximately 40 minutes to CPS and back.  Thus, Washington suspected that Sparks initialed the signature on the form.

Second, Berry investigated an ethical violation concerning

Sparks' account at Healthcare Suppliers ("Healthcare"). Lisa Williamson ("Williamson"), an employee at Healthcare, complained that the Healthcare paperwork listed her as the authorized person on the account but that she did not authorize $1,484.00 in advertising. Further, Williamson said that she did not even speak with Sparks. Williamson's boss, David McNamara ("McNamara"), stated that the advertising had to be canceled because Healthcare had changed its name.

On January 10, 1997, Washington and Anita Moore ("Moore"), the Mississippi Operations Manager, met with Sparks to discuss the CPS and Healthcare accounts. Sparks denied Draughn's allegation that he had forged the signature. When asked about his return trip to CPS, Sparks replied that it was not fifteen minutes later, but simply later that day.

Sparks also explained that he spoke with McNamara regarding the Healthcare account. Sparks noted that McNamara gave him Williamson's name as the contact person on the Healthcare account. Further, Sparks explained that his manager, Bob Glass, gave Sparks permission to authorize the account via telephone ("per tel"), because Healthcare was renewing their account.

On January 14, 1997, Moore and Washington met with Sparks again. Moore questioned Sparks again about the signature on the consumer tips addendum. Sparks claimed that the signature belonged to Draughn. In this meeting, however, Sparks claimed that he did not return to the CPS office. Instead, Sparks explained that the addendum had been in his briefcase all along. When Sparks was

-4-

questioned about the inconsistency in his stories, he denied telling Washington and Moore that he had made a return trip to CPS. At this time, Moore also told Sparks that he was responsible for documenting the correct name and information on the Healthcare account. Moore then terminated Berry on the basis of his ethical violations.

Sparks filed a complaint against Berry in federal court alleging that Berry terminated him in violation of the ADEA. Further, Sparks asserted state law claims for breach of contract and intentional infliction of emotional distress. Berry filed a Motion for Summary Judgment arguing that Sparks could not establish a prima facie case of age discrimination under the ADEA.

The district court found that Sparks did not establish a prima facie case of age discrimination. The district court also dismissed Sparks' state law claims as a matter of law.

## II. DISCUSSION

A. Motion for Leave to File Notice of Appeal.

The district court granted summary judgment in favor of Berry in this action on August 4, 1998. Under Fed. R. App. P. 4(a)(1), Sparks had thirty days, until September 3, 1998, to file a notice of appeal. On September 4, 1998, Sparks' counsel realized that the time to file the notice of appeal had passed.

Under Fed. R. App. P. 4(a)(5), the district court may extend the time to file a notice of appeal if (i) a party so moves no later than 30 days after the time prescribed by the Rule 4(a) expires; and (ii) that party shows excusable neglect or good cause.

Sparks' counsel filed a Motion for Leave to File Notice of Appeal with the district court pursuant to Rule 4(a)(5) on September 4, 1998. The district court granted Sparks' Motion for Leave to File Notice of Appeal, finding that Sparks' counsel demonstrated excusable neglect pursuant to Fed. R. App. P. 4(a)(5). Berry contends that the district court abused its discretion in allowing Sparks to file a notice of appeal on the ground that Sparks had not demonstrated excusable neglect.

We review the district court's decision to extend the time to file a notice of appeal for abuse of discretion. *See Midwest Employers Casualty Co. v. Williams*, 161 F.3d 877, 879 (5th Cir. 1998) (reviewing magistrate judge's decision to extend time to file an appeal).

This Court has adopted the Supreme Court's standard of "excusable neglect" announced in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership,* 507 U.S. 380, 395-97 (1993). *See Halicki v. Louisiana Casino Cruises, Inc.*, 151 F.3d 465, 469 (5th Cir. 1998). In *Pioneer*, the Court concluded that the determination of excusable conduct is equitable and takes into account factors such as 1) danger of prejudice; 2) length of delay; 3) reason for delay; and 4) evidence of good faith. *See Pioneer,* 507 U.S. at 395.

The district court reviewed Sparks' Motion for Leave and found that the extenuating circumstances were sufficient to meet the standard of excusable neglect under *Pioneer.* As an equitable consideration, we hold that the district court did not abuse its

discretion in granting Sparks' Motion for Leave to File Notice of Appeal. There was no danger of prejudice and the length of delay was minimal. Further, the affidavit of Sparks' counsel claimed a busy trial practice, an ill child, and a miscalculation of the days all led to the delay. Finally, Sparks' counsel demonstrated good faith by contacting the district court and Berry's counsel on the morning of September 4 to notify them of the missed deadline.

B.   State Law Claims

Sparks raised two state law claims against Berry in his complaint: breach of employment contract and intentional infliction of emotional distress. Berry contends that Sparks waived his state law claims because he failed to address them in his initial brief on appeal. Sparks, however, contends that his state law claims flow from the common nucleus of facts underlying his age discrimination claim. Citing *United Paperworkers Intern. AFL-CIO, CLC v. Champion Intern. Corp.*, 908 F.2d 1252, 1255 (5th Cir. 1990), Sparks suggests that this Court should logically deduce his state law claims from his age discrimination claim.

This Court has held that "[a]n appellant abandons all issues not raised and argued in its initial brief on appeal." *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994). Neither Sparks' initial brief nor his reply brief addresses any law or facts relating to intentional infliction of emotional distress or breach of employment contract. We hold that Sparks waived his state law claims because he did not raise these issues on appeal in his initial brief. *See id.*

C.  Age Discrimination Claim

Sparks contends that the district court erred when it granted summary judgment in favor of Berry on his age discrimination claim under the ADEA.  The district court found that Sparks did not establish a prima facie case of age discrimination.

This Court reviews a district court's grant of summary judgment *de novo*.  *See Brown v. CSC Logic, Inc.*, 82 F.3d 651, 653 (5th Cir. 1997).  Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law."  Fed. R. Civ. P. 56(c).

In order for Sparks to establish a prima facie case of age discrimination, he must show:  (1) he was discharged; (2) he was qualified for his position; (3) he was within the protected class; and (4) he was replaced by someone outside the protected class, someone younger, or was otherwise discharged because of his age. *See Brown,* 82 F.3d  at  654.

Sparks satisfies the first three elements of his prima facie case.  Berry terminated Sparks.  Sparks was qualified for his position and Sparks was fifty-seven.   Sparks has not asserted that he was replaced by someone outside the protected class or by someone younger.   Thus, Sparks must  establish that he was discharged because of his age.

Sparks offers three separate grounds for showing that he was discharged on the basis of his age.  First, Sparks contends he was

-8-

hired to cover up Berry's previous age discrimination against another employee. Second, Sparks argues that he was treated less favorably than a similarly situated, younger employee. Finally, Sparks offers an assortment of other evidence to support his contention that Berry discharged Sparks because of his age.

### 1. Discriminatory Hiring

At the time of his hiring, Sparks was within the age group protected by the ADEA. Where a company hires an employee who is within the protected class and then discharges that employee, there is an inference that age discrimination was not the motivation. *See Brown*, 82 F.3d at 658. "Claims that employer animus exists in termination but not in hiring seem irrational." *Id.* (citing *Proud v. Stone*, 945 F.2d 796, 797-98 (4th Cir. 1991)).

Sparks asserts that Berry hired him for the purpose of testifying in a pending lawsuit against Berry. Specifically, Sparks states that Berry intended to use him to show that the company hires older people to combat an age discrimination suit by a former employee, Helen Cantrell ("Cantrell"). Cantrell filed an EEOC charge of discrimination in August, 1992 and the lawsuit was served on Berry in June, 1993. The Cantrell lawsuit settled in October, 1995.

Sparks' facts do not establish that Berry hired him for a discriminatory purpose. Sparks, experienced in advertising sales, was qualified for the position at Berry and was successful in this position. The Cantrell lawsuit was not served on Berry until a few months after Berry hired Sparks. In addition, Sparks continued to

work at Berry for more than a year after the Cantrell lawsuit settled.

### 2. Similarly-Situated Employee

Sparks contends that Berry discharged him on the basis of his age because he was treated less favorably than a similarly-situated, younger employee. Sparks argues that Berry terminated him but only suspended Ted Watson ("Watson"), age 40, under similar circumstances.

This Court has held that the plaintiff "must show that [the employer] gave preferential treatment to a younger employee under 'nearly identical' circumstances." *Hamilton v. Grocers Supply Co., Inc.*, 986 F.2d 97, 99 (5th Cir. 1993) (citing *Little v. Republic Refining Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991)). Sparks contends that Berry gave preferential treatment to Watson and that they are similarly situated. Sparks points to the fact that Berry terminated Sparks for falsifying information on two accounts but only suspended Watson for discrepancies on signatures on five accounts.

The extent of Sparks and Watson's similarities, however, end with their account falsifications. Watson received positive customer recontacts, had low complaints and adjustments, and had no prior history of improper handling of accounts. On the other hand, Berry offered evidence that Sparks had received counseling for his behavior at work, a reprimand for failing to follow company procedures, a one-day suspension for improper handling of an account, and a number of complaints from his accounts. Washington

explained in her deposition testimony that she considered Sparks' history of customer complaints when she was considering Sparks' termination. Finally, in her memorandum, Moore referenced Sparks' history of excessive customer complaints.

The personnel records demonstrate that Berry considered Sparks' level of customer complaints in its decision to terminate him. Watson's lack of customer complaints was a factor in Berry's decision not to terminate him. Because of the difference in the level of customer complaints, we agree with the district court that Sparks and Watson's circumstances were not nearly identical, and for this reason, Berry's differential treatment of Sparks does not establish age discrimination. *See Davin v. Delta Airlines*, 678 F.2d 567, 571 (5th Cir. 1982) (plaintiff failed to establish a *prima facie* case of gender discrimination based on disparate treatment of terminated female employee and retained male employee where employer considered female plaintiff's history of causing fear in other employees at ticket counter).

3. Other Proffered Evidence of Age Discrimination.

Sparks offers a number of alternative theories to establish that Berry discriminated against him because of his age. First, Sparks contends that a memorandum drafted by Loungo in 1989 demonstrates an atmosphere of age discrimination. The 1989 memorandum categorized Berry into three different categories of employees: (1) long-tenured representatives approaching retirement; (2) over 40 tenured sales reps; and (3) under 40 less-tenured reps. The memo expressed concern over the age, performance, and ability

-11-

to terminate representatives in group 2.

In *Smith v. Berry Co.*, 165 F.3d 390, 394 (5th Cir. 1999), this Court affirmed a jury's finding that Berry discriminated against a former employee because of her age. In part, the *Smith* court relied on the Loungo memorandum as evidence to support the finding of age discrimination. The relevance of the memorandum here, however, is too tenuous to support a finding of age discrimination. The memorandum was not related to the employment decision at issue in this case.

Second, Sparks contends that two age-related comments, along with other evidence of age discrimination, created an inference of a discriminatory atmosphere at Berry. Sparks, relying on *Atkinson v. Denton Publishing Co.,* 84 F.3d 144 (5th Cir. 1996), argues that comments such as "Pops" and "an older, gray-haired gentleman," created a triable issue of age discrimination for a jury.

Sparks, however, fails to realize that the plaintiff in *Atkinson* had established a prima facie case of age discrimination. In *Atkinson*, the employee had demonstrated a prima facie case of age discrimination, the employer rebutted the presumption, then the district court granted summary judgment. *See id*. at 149-50. The *Atkinson* court reversed the district court's grant of summary judgment for the employer, holding that the employee's evidence had created a fact issue on the issue of whether age was a factor in his termination. *Id.* at 150.

In this case, the district court granted summary judgment when Sparks did not meet his burden of establishing a prima facie case

of age discrimination.  Sparks does not and cannot contend that the vague age-related comments are sufficient to prove that Berry terminated Sparks because of his age.  *See EEOC v. Texas Instruments, Inc.,* 100 F.3d 1173, 1181 (5th Cir. 1996) (an age based comment must be direct and unambiguous);  *Waggoneer v. City of Garland*, 987 F.2d 1160, 1166 (5th Cir. 1993) ("old fart" comment does not establish age animus).

Finally, Sparks contends that the finding of the Mississippi Employment Security Commission ("MESC") infers that Berry dismissed Sparks because of his age.  When Sparks was terminated, he filed for unemployment benefits with the MESC.  Berry contested the unemployment benefits, claiming that Berry was discharged for mishandling accounts.  The MESC awarded benefits to Sparks, finding that Berry did not show that he was discharged for the misconduct related to his job.  The MESC finding, however, does not provide affirmative evidence that Berry discriminated on the basis of his age. Therefore, Sparks still has not established a *prima facie* claim of age discrimination.

## IV.  CONCLUSION

For the reasons set forth above, we AFFIRM the district court's grant of summary judgment in favor of the defendant, L.M. Berry & Company.