United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 10, 2004**

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

———————

m 04-20388

———————

THOMAS G. MORRISON,

Plaintiff-Appellant,

VERSUS

WEYERHAEUSER COMPANY,

Defendant-Appellee.

———————————

Appeal from the United States District Court
for the Southern District of Texas
m H-03-CV-1033

———————————

Before DAVIS, SMITH, and DENNIS,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Thomas Morrison sued his former employer, Weyerhaeuser Company ("Weyerhaeuser"), alleging that his termination violated, *inter*

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

*alia*, title I of the Age Discrimination in Employment Act of 1967 ("ADEA") and gave rise to state law tort claims of intentional infliction of emotional distress ("i.i.e.d.") and invasion of privacy. The district court granted summary judgment for defendant. Finding no error, we affirm.

## I.

Morrison was hired as a shipping supervisor in September 2001, when he was fifty years old. He received extensive safety training, including courses in the plant's Lock Out, Tag and Try ("LOTT") procedures, Posted Con-

fined Space Entry Areas, the Roof Access policy, and the Job Safety Analysis ("JSA") process. As Shipping Supervisor, Morrison had duties that included conducting safety training for employees in his department on the same subjects. Further, he was responsible for the plant's roof, where the "cyclone system," a scrap accumulation system for the plant's finishing and corrugation processes, was located. When the system became clogged, two or three employees had to go to the roof to unclog it.

On November 26, 2002, Morrison was notified that the cyclone system was clogged, so he asked a clerk to tell another employee to meet him on the roof, as required by company policy. He then went onto the roof unaccompanied, in violation of the Roof Access policy. He removed the access hatch to the cyclone, activating a warning that the cyclone was a "confined space area" requiring employees to (1) fill out a non-routine JSA; (2) de-energize moving parts in the equipment pursuant to LOTT procedures; and (3) take all other necessary steps before entering. Morrison did not de-energize the cyclone, but manually inserted a metal rod into the diverter space to free the clog. The diverter activated while his arm was inside, pinning him in the machine. After he radioed for help, a response team de-energized the diverter and rescued him.

Morrison was transported to the emergency room, accompanied by Plant Manager Doug Mitchem and Morrison's direct supervisor, Victor Self. After Morrison had received an x-ray and two pain shots and medical personnel had determined that he had no broken bones, he was released to go home.

The next day, based on a preliminary investigation by Weyerhaeuser's Accident Investi-

gation Team, Morrison was issued a three-day suspension for violating the LOTT policy. After further investigation, other safety violations were uncovered, and on December 5, he was terminated for those violations.[1] Mitchem was responsible for the decisions to hire and fire Morrison.

## II.
## A.

We review a summary judgment *de novo* and are bound by the same standards as was the district court. *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 371 (5th Cir. 2002). Summary judgment is appropriate only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, "when viewed in the light most favorable to the non-movant, 'show

---

[1] The termination letter listed the following safety rule violations that "demonstrated that [Morrison's] ability to place safety as the first priority in the facility is not acceptable" and resulted in his termination:

(1) Morrison violated Weyerhaeuser's Roof Access policy by accessing the roof alone;

(2) Morrison violated Weyerhaeuser's JSA (Job Safety Analysis) policy by failing to complete a non-routine JSA prior to attempting to clear the jam in the cyclone system.

(3) Morrison violated the Confined Space Entry process by failing to perform the required tasks preliminary to entering a clearly identified confined space; and

(4) Morrison violated the LOTT process by failing to isolate all energy sources prior to sticking his arm in the diverter area inside the cyclone.

that there is no genuine issue as to any material fact.'" *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). Once the moving party has demonstrated that the non-moving party has no evidence such that a reasonable jury could reach a verdict in its favor, the non-moving party must put-forth specific facts that demonstrate a genuine factual issue for trial. *Id.*

### B.

Morrison claims his termination was age discrimination. To maintain such a claim, a plaintiff must bear the initial burden to make a *prima facie* case of discrimination under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Where only circumstantial evidence of discrimination is available, a plaintiff must show that he (1) was a member of the protected class (over 40 years old); (2) was qualified for the position; (3) was fired; and (4) was either replaced by someone younger, treated less favorably than employees who were similarly situated or was otherwise discharged because of his age.[2]

If established, a *prima facie* case raises an inference of discrimination, and the burden of production shifts to defendant to proffer a "legitimate nondiscriminatory reason" for its adverse selection. *Sandstad,* 309 F.3d at 897. If defendant meets this burden, the presumption of discrimination is dissipated, and the burden returns to the plaintiff to prove discrimination. *Id.* at 897 (citing *St. Mary's Honor Ctr. v.*

*Hicks*, 509 U.S. 502, 511-12 (1993)). "[A] plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 148 (2000).

Weyerhaeuser does not contest that Morrison was a member of the protected age group. Even if we assume, as did the district court, that Morrison otherwise properly stated a *prima facie* case of intentional age discrimination, Weyerhaeuser adequately proffered a non-discriminatory reason for firing Morrison——the violation of four separate safety violations on November 26——such that the burden was shifted to Morrison to prove that the proffered rationale was pretextual.

In opposition to summary judgment, Morrison points to evidence in the record that he argues is probative of pretext: (1) testimony of an occupational safety expert; (2) testimony of a handwriting expert; and (3) Morrison's deposition testimony.[3] Because we agree with the district court that the proffered evidence is not competent to raise an issue of material fact to demonstrate pretext, summary judgment was proper.

The primary evidence that Morrison relies

---

[2] *See West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 (5th Cir. 2003) (citing *Brown v. CSC Logic*, Inc., 82 F.3d 651, 654 (5th Cir. 1996)); *see also Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 897 (5th Cir. 2002)*.*

[3] Morrison also argues that certain Weyerhaeuser documents——cited from outside the record——demonstrate that the rules used to justify his termination were not in force at the time of the accident and were merely fabricated afterwards. Because this purported evidence is not in the record, we may not consider it. *See Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988).

3

on to show pretext is the testimony of Robert Barr, an expert in occupational safety, but his affidavit does not properly raise an issue of material fact with regard to pretext. Although conceding that Morrison violated the four rules, Barr concludes that the four violations should have been considered to be one incident, and thus under Weyerhaeuser's disciplinary policies Morrison should have faced, at most, a suspension and retraining.

Barr's statement, however, appears to be bare opinion, without citation to any source. It amounts to nothing more than his personal feeling that Morrison was treated incorrectly or unfairlySSthat he was not subjected to "acceptable business practices in the safety industry"SSwhich is not probative of pretext. At issue here is whether the termination was done with discriminatory intent,[4] not whether it was correct from a business, ethical, or personal perspective. [5]

Morrison also offered the testimony of a handwriting expert, Jeannett Hunt, who opined that Morrison's purported initials on a June 4, 2002, non-routine task check sheet were falsified. As the district court correctly noted, this evidence did not raise a material issue of fact with regard to pretext, because Morrison has failed to explain its relevance to the accident or to his termination.

Besides the expert testimony, Morrison's only summary judgment evidence is his deposition and affidavit testimony to the effect that he believes the rules were used as a pretext to discriminate against him because younger employees who had committed safety violations were merely suspended, not fired. Morrison is able specifically to identify one supervisor, Mitch Mathis, who received different discipline for a safety violation.

The Mathis incident is not probative circumstantial evidence of pretext, however, because the circumstances surrounding his violation were distinguishable as far less severe than those in this caseSSMathis committed only one, rather than four violations, and self-re-

---

[4] *Sandstad*, 309 F.3d at 899 ("[An employer] is entitled to be unreasonable so long as it does not act with discriminatory animus"); *see also Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995).

[5] Barr also concluded that it was inappropriate for Weyerhaeuser to hold management to a higher standard than that used for other employees, because he has not seen that in his personal experience and it was not explicitly called for in Weyerhaeuser's disciplinary policies. The appropriate question in an ADEA case, however, is whether the plaintiff was treated differently from another *similarly situated* employee that was not a member of his protected class, i.e., not over forty years old. *See Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 298, 304-05 (5th Cir. 2000) (requiring plaintiff to show that company treated others differently in "nearly identical circumstances"); *Sarsha v. Sears,*
(continued...)

[5](...continued)
*Roebuck & Co.*, 3 F.3d 1035, 1042 (7th Cir. 1993) (holding that manager's discrimination claim required evidence that another manager was treated differently for a similar act).

A company concerned for its safety recordSSa high priority of Weyerhaeuser's, as Morrison admittedSSdoes not want to send a message to its employees that its safety rules are optional or unimportant. It is thus perfectly rational for a supervisor to be disciplined more severely for safety violationsSSparticularly where he is responsible for training subordinates on safetySSbecause of the bad example that is set when a supposed "expert" on safety ignores the rules.

ported the infraction.[6] Further, it is doubtful that Mathis can be considered a younger employee for a showing of pretext, because he was in his late forties and thus was in the protected class and was not that much younger than Morrison.

Other than Mathis, Morrison refers to other individual employees only generally, without specific reference to their identities or circumstances. This evidence is not probative of pretext.

Even if we were to conclude that some of the evidence is probative of pretext, the connection is not strong enough to overcome the "same-actor inference," which was adopted in *Brown v. CSC Logic, Inc.*, 82 F.3d 651 (5th Cir. 1996). Where the same person is responsible for hiring and discharging an individual, there is an inference that age was not the reason for the discharge.[7]

Morrison was both hired and fired within a period of two years by Mitchem. At best, the evidence raises a tenuous inference of pretext, which is insufficient to survive summary judgment in most cases where an employer has proffered a legitimate, non-discriminatory reason for the adverse employment decision, and particularly so where the same-actor inference comes into play.[8]

In sum, because Morrison did not meet his burden to produce evidence from which a factfinder could reasonably find that Weyerhaeuser's proffered reason for terminating his employment was pretext for age discrimination, the district court appropriately granted summary judgment.[9]

C.

Morrison alleges that Weyerhaeuser was guilty of i.i.e.d. when it falsified a safety procedure checklist to assist its efforts to terminate him, and by terminating him. To state a

---

[6] *See Wyvill*, 212 F.3d at 304-05 (requiring plaintiff to show that company treated others differently in "nearly identical circumstances"); *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999) ("We require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges.").

[7] *See Brown*, 82 F.3d at 658 ("Claims that employer animus exists in termination but not in hiring seem irrational. From the standpoint of the putative discriminator, it hardly makes sense to hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job.") (citations, quotation marks, and brackets omitted).

[8] *See West,* 330 F.3d at 385 ("It is possible for a plaintiff's evidence to permit a tenuous inference of pretext yet be insufficient to support a reasonable inference of discrimination.").

[9] As the district court noted, the record is replete with evidence that Morrison's termination for violating safety rules was not pretextual. His employment record at Weyerhaeuser was spotty, indicating a pattern of ignoring company policies, including safety regulations. His supervisor had given him numerous oral reprimands for failure properly to train subordinates in safety, and he was given a written warning that "if you cannot/will not perform as I require, you will not work here." *See Reeves*, 530 U.S. at 148 (upholding summary judgement "[i]f the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination occurred").

5

claim of i.i.e.d. in Texas, a plaintiff must show (1) intentional or reckless action (2) that was extreme and outrageous; (3) that caused plaintiff emotional distress; and (4) that was severe.[10] Whether conduct is extreme and outrageous is initially a question of law.[11] For conduct to be sufficiently extreme and outrageous to state an i.i.e.d. claim, it must "go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."[12]

As a threshold matter, the mere fact that Morrison was terminated is insufficient to state an i.i.e.d. claim; Texas courts have announced that such claims do not attach to the ordinary employment dispute and can exist in only the most unusual of circumstances.[13] Otherwise, the district court was correct in asserting that even if Morrison's claim of forgery were true, that act was insufficiently extreme and outrageousSSas a matter of lawSSto establish an i.i.e.d. claim. As the court pointed out, the checklist was not used as a basis for the decision to fire Morrison and was not used against him in any way, even to embarrass him.

Morrison's argument that the alleged forging of initials on the checklists constitutes extreme and outrageous conduct based on *Dean v. Ford Motor Credit Co.,* 885 F.2d 300 (5th Cir. 1989), is unconvincing. In *Dean,* we interpreted Texas law to allow an i.i.e.d. claim where a plaintiff alleged that her supervisor intentionally placed two forged company checks in her purse, because "[m]erely causing the innocent plaintiff to be subject to such an *accusation of crime* and putting her in fear that it might come passes the bounds of conduct that will be tolerated by a civilized society and is, therefore, outrageous conduct." *Id.* at 307 (emphasis added). Morrison was not accused of any crime, so *Dean* is inapposite. Even if the alleged forgery was illegal or unethical, or the termination was unlawful under the ADEA, that does not necessarily make it sufficiently extreme and outrageous to support a claim for i.i.e.d.[14]

[10] *Tex. Farm Bureau Mut. Ins. Cos. v. Sears*, 84 S.W.3d 604, 610 (Tex. 2002); *Twyman v. Twyman*, 855 S.W.2d 619, 621-22 (Tex. 1993); *Hughes Training Inc. v. Cook*, 254 F.3d 588, 594 (5th Cir. 2001).

[11] *Atkinson v. Denton Pub. Co.*, 84 F.3d 144, 151 (5th Cir. 1996).

[12] *Twyman,* 855 S.W.2d at 621 (quoting RESTATEMENT (SECOND) OF TORTS § 46 (1965)).

[13] *Benners v. Blanks Color Imaging, Inc.,* 133 S.W.3d 364, 373 (Tex. App.SSDallas 2004, no pet. h.) ("In the workplace, to properly manage its business, an employer must be able to supervise, review, criticize, demote, transfer and discipline employees. Although many of these acts are necessarily unpleasant for the employee, an employer must have latitude to exercise these rights in a permissible way, even though emotional distress results. Thus, a claim for intentional infliction of emotional distress does not lie for an ordinary employment dispute.") (internal citations omitted)*; see also Walker v. Thompson*, 214 F.3d 615, 628 (5th (continued...)

[13](...continued)
Cir. 2000) (citing *Horton v. Montgomery Ward & Co.*, 827 S.W.2d 361, 369 (Tex. App.SSSan Antonio 1992, writ denied)).

[14] *Foye v. Montes*, 9 S.W.3d 436, 440 (Tex. AppSSHouston [14th Dist.] 1999, pet. denied) ("Even conduct which may be illegal in an employment setting may not constitute the sort of behavior that constitutes 'extreme and outrageous' conduct.") (citing *Gearhart v. Eye Care Ctrs. of Am. Inc.,* 888 F. Supp. 814, 819 (S.D. Tex.

Alternatively, Morrison's claim fails as a matter of law because there is no evidence that he suffered the requisite degree of emotional distress. Under Texas law, the emotional distress must be "severe."[15] "Severe" emotional distress is that which no reasonable person could be expected to endure and must be more than "mere worry, vexation, embarrassment or anger."[16] Morrison has not sought counseling, therapy or medication and admitted that the distress caused by his discharge was mostly financial. He merely asserts, without citation to evidence, that "[i]t is undisputed that he suffered severe damage," which is insufficient on its own allow his i.i.e.d. claim to survive summary judgment.[17]

### D.

Finally, Morrison brought a claim for the Texas tort of invasion of privacy, specifically that he was subject to an unreasonable intrusion on his private affairs when his supervisor insisted on and was present during his medical examination following the accident.[18] There are three elements to this type of invasion of privacy claim: (1) an intentional intrusion; (2) upon the seclusion, solitude, or private affairs of another; (3) that would be highly offensive to a reasonable person.[19] Texas courts have added a fourth elementSSthat the intrusion be unreasonable, unjustified or unwarranted.[20] In the employment context, Texas further requires that the employee have a reasonable expectation of privacy in the area searched or the matters investigated.[21]

The district court correctly found that Morrison cannot sustain a claim for invasion of privacy, because he did not have an expectation of privacy in anything that occurred at the examination. He testified that all that occurred was an x-ray of his hand, and no medical personnel asked him questions. By Morrison's own admission, nothing private was disclosed, and he did not feel that he was injured by his supervisor's presence. Under these circumstances, where he was not harmed and had no

---

[14](...continued)
1995)).

[15] *Twyman*, 855 S.W.2d at 621-22.

[16] *Huckabay v. Moore*, 142 F.3d 233, 242 (5th Cir. 1998) (citing *Behringer v. Behringer*, 839, 844 (Tex. App.SSFort Worth 1994, writ denied); *Regan v. Lee*, 879 S.W.2d 133, 136 (Tex. App. SSHouston [14th Dist.] 1994, no writ)).

[17] *Ford v. NYLCare Health Plans, Inc.,* 301 F.3d 329, 332-33 (5th Cir. 2002) ("At the summary judgment stage, 'the plaintiff can no longer rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts.") (internal citations omitted); *see also TIG Ins.,* 276 F.3d at 759 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.") (internal citations omitted).

[18] *See Billings v. Atkinson,* 489 S.W.2d 858, 859 (Tex. 1973) (recognizing tort of invasion of privacy); *see also Cain v. Hearst Corp.,* 878 S.W.2d 577, 578 (Tex. 1994) (identifying which forms of tort are recognized, including intrusion on the seclusion of the private affairs of another).

[19] *Valenzuela v. A*quino, 853 S.W.2d 512, 513 (Tex. 1993); RESTATEMENT (SECOND) OF TORTS §625B (1977).

[20] *See Billings,* 489 S.W.2d at 860.

[21] *See K-Mart Corp. v. Trotti*, 677 S.W.2d 632, 636 (Tex. App.SSHouston [1st Dist.] 1994) (finding that employee had reasonable expectation of privacy in locked locker and purse).

intention of keeping the revealed information private, Morrison cannot sustain a claim for invasion of privacy.[22]

AFFIRMED.

---

[22] In addition, it is doubtful that Morrison had a reasonable expectation of privacy in information sought by the employer as part of an investigation directly related to its business interests. *See, e.g., Patton v. United Parcel Serv., Inc.,* 910 F. Supp. 1250, 1276 (S.D. Tex 1995).