Larry WALLER

v.

Gary L. SPEARS & Hardin County

Civil Action No. 1–97–CV–285.

United States District Court,
E.D. Texas,
Beaumont Division.

Jan. 14, 1999.

Ed W. Barton, Law Offices of Ed W. Barton, John Dale McElroy, Orange County Attorney's Office, Orange, TX, for plaintiff.

David Eric Bernsen, Gene Melton (Zona) Jones, Christopher Todd Coco, Bernsen Jamail & Goodson LLP, Beaumont, TX, for defendant Gary L. Spears.

### MEMORANDUM OPINION

RADFORD, United States Magistrate Judge.

This is a civil rights case filed under 42 U.S.C. § 1983. The undersigned United States Magistrate Judge previously entered an order denying the defendants' motion for summary judgment. This memorandum opinion outlines the court's reasons for denying the motion.

*Factual and Procedural Background*

On May 18, 1995, Deputy Gary Spears of the Hardin County Sheriff's Depart-

ment responded to a shots fired call at plaintiff's residence at approximately 8:00 p.m. He arrived at plaintiff's residence with his emergency lights activated. Spears spoke to plaintiff and learned that his son and some friends had been outside shooting at birds.[1] Plaintiff had his son and his two friends come outside and speak to Spears. At the time of the call, plaintiff did not possess a firearm, no shots were fired in the officer's presence, nor were any threats made by plaintiff toward the officer. Plaintiff had been drinking, and Spears could smell alcohol on his breath. Spears determined that no law had been violated, no arrestable offense had occurred, and he left plaintiff's residence.[2] Plaintiff followed him down his driveway and closed his gate, locking it with a padlock.

A second shots fired call came in later the same evening, again alleging that shots had been fired once again at plaintiff's residence.[3] Spears again responded to the call; however, this time he brought along Game Warden Boone and Deputy Haffa as backup. There is no evidence that Spears informed either officer that he had been there earlier the same night, or the circumstances of which he had knowledge previously.

The officers traveled in separate vehicles and did not activate their emergency lights. Spears and Boone entered into the fenced and gated area of plaintiff's property.[4] Plaintiff observed from inside his home that someone was apparently trespassing on his property, and he stepped out of the front door with a shotgun. Plaintiff did not point his gun at the trespassers, even though it was dark and he could not identify them until the officers stepped into the light. After the officers announced who they were, plaintiff put his gun down.[5] Warden Boone went around the side of the house to speak to plaintiff's son, whom he knew. Plaintiff again asked Spears to leave his property, and he refused. The two began to argue, when Spears and Haffa, who also scaled the locked fence, came onto plaintiff's porch, slammed him against the wall, and handcuffed him. He spent the night in jail in the "drunk tank" and posted a $1000 bond the next morning. His shotgun was confiscated, and criminal charges were dropped some two years later.[6]

Plaintiff claims that his Fourth Amendment rights were violated, in that he was unlawfully arrested and detained, he was subjected to excessive use of force, and his property was unlawfully searched without a warrant or the existence of exigent circumstances to justify a warrantless search. He also claims that he was subjected to a prosecution under false charges.[7] Defen-

---

1. Plaintiff lives in a rural area which is outside the incorporated city limits. It is not unlawful to discharge a firearm on one's own property in such circumstances.

2. Plaintiff claims that during the entire time Spears was on his property, he had his hand over his gun. Plaintiff admits that he became agitated that the officer continued to remain on his property after he knew there was nothing going on, and used profanity in asking Spears to leave. Plaintiff also admits that he had been drinking that evening, but was not intoxicated. This fact is also in dispute; however, there was no indication in Spear's report that plaintiff was intoxicated at the time of the first call.

3. Both calls came from the same neighbor. There is some evidence that there had been some past problems between plaintiff and this neighbor.

4. The fence gate was locked, requiring the officers to climb over the five-foot fence.

5. There is a dispute as to how much time elapsed between the officers identifying themselves, which they claim to have done twice, before plaintiff put his gun down. There is also a factual dispute as to whether the offense of "deadly conduct" was committed in the officers' presence; however, no charges were ever filed for that offense by Boone or Haffa. Boone claims that plaintiff pointed the gun at him, which is also in dispute.

6. A criminal complaint was never properly sworn to by Spears.

7. Plaintiff also claims that he suffered mental anguish as a result of defendants' actions against him, specifically the false prosecution. This memorandum opinion does not consider that claim.

dants seek summary judgment on these claims based upon qualified immunity as to both the individual police officer, who is sued in his individual capacity, and the County of Hardin.

### Applicable Principles of Law

#### a. Summary Judgment

Summary judgment is to be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED R. CIV. P. 56(c). "The mere existence of a factual dispute does not by itself preclude the granting of a summary judgment. '[T]he requirement is that there be no genuine issue of material fact.' " *St. Amant v. Benoit,* 806 F.2d 1294, 1296 (5th Cir.1987) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

A factual dispute is "material" if "its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Texas Manufactured Hous. Ass'n, Inc. v. City of Nederland,* 101 F.3d 1095, 1099 (5th Cir.1996), *cert. denied,* 521 U.S. 1112, 117 S.Ct. 2497, 138 L.Ed.2d 1003 (1997). "There is no genuine issue of material fact if the evidence is such that, drawing all reasonable inferences in favor of the nonmovant ... a reasonable jury could not return a verdict in his favor." *Atkinson v. Denton Pub. Co.,* 84 F.3d 144, 148 (5th Cir.1996).

The movant carries the burden of showing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "After the movant has presented a properly supported motion for summary judgment, the burden shifts to the non-

moving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Texas Manufactured Housing Ass'n, supra,* at 1099 (quoting *Conkling v. Turner,* 18 F.3d 1285, 1295 (5th Cir.1994)).

#### b. Qualified Immunity

■ When a defendant pleads the defense of qualified immunity, the court must first determine whether the plaintiff has alleged a clearly established constitutional right. *Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991), *reh'g denied,* 501 U.S. 1265, 111 S.Ct. 2920, 115 L.Ed.2d 1084. (1991); *see also Colston v. Barnhart,* 130 F.3d 96 (5th Cir.1997)(*quoting Harper v. Harris County,* 21 F.3d 597, 600 (5th Cir.1994)). If the plaintiff has done so, the court then must determine whether the defendant's actions were objectively reasonable with reference to clearly established law at the time of the conduct in question. *Siegert, id.* at 231, 111 S.Ct. 1789.

■ Qualified immunity shields officers from a damage suit if they could have reasonably believed their actions to be lawful, in light of clearly established law and the information the arresting officers possessed at the time of the conduct in question. *Hunter v. Bryant,* 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). The Supreme Court instructs that in determining the reasonableness of the officers' conduct, the court is not to employ the "20/20 vision of hindsight." *Graham v. Connor,* 490 U.S. 386, 396–97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).[8] The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law. *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).[9]

---

**8.** In analyzing the objective reasonableness of the officer's decisions at the time of the incident, the court must consider the fact that officers are often forced to make split second

judgments, in circumstances that are tense, uncertain, and rapidly evolving. *Graham, id.*

**9.** Even if the officer is mistaken, if his decision and/or actions were reasonable, qualified

### c. Municipal Liability

A claim of municipal liability, under § 1983, requires plaintiff to demonstrate municipal causation. Such a claim is governed by the principles set out in *Monell*[10] and its progeny. *Monell* applies to suits against municipalities and against municipal employees in their official capacities.

According to the doctrine of municipality causation, liability under § 1983 can only be shown if the alleged constitutional violations are inflicted by a municipal employee, such as a police officer, pursuant to an official policy of the city. *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir.1984) (en banc), *cert. denied*, 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985).[11] To attach liability to the city for the inadequate supervision or training of its police officers, there must be evidence of a pattern of similar incidents in which citizens were injured or endangered by intentional or negligent police misconduct and/or that serious incompetence or misbehavior was general or widespread throughout the police force. *Languirand v. Hayden*, 717 F.2d 220 (5th Cir.1983), *reh'g denied*, 721 F.2d 819, *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984).

### Discussion

The court determines that plaintiff has alleged a violation of a clearly established constitutional right; therefore, the court must determine whether defendant acted objectively reasonable at the time of the incidents which form the basis for this case. *Siegert, supra,* at 231, 111 S.Ct. 1789.

The touchstone of an alleged Fourth Amendment violation based upon the validity of a search or seizure is one of reasonableness in light of the totality of the circumstances. *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). In determining the reasonableness of a particular law enforcement practice, the court must weigh the public interest promoted by the practice against its intrusion upon the personal rights of the individual protected by the Fourth Amendment. *Bell v. Wolfish,* 441 U.S. 520, 528, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Some of the factors the court should consider are the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. *Id.*

In analyzing a warrantless arrest, search, or seizure, the court must examine whether probable cause and exigent circumstances existed to justify the search and arrest without a warrant. *Id.* Probable cause to search exists when reasonably trustworthy facts and circumstances within the knowledge of an officer on the scene would lead a man of reasonable prudence to believe that the instrumentality of a crime or evidence of a crime will be found. Some seizures admittedly covered by the Fourth Amendment constitute such limited intrusions on the personal security of those detained and are justified by such substantial law enforcement interests that they may be made on less than probable cause, so long as police have an articulable basis for suspecting criminal activity. *Michigan v. Summers,* 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). The general rule is that every arrest is unreasonable unless supported by probable cause. *Id.* Wheth-

immunity protects him. *Hunter, supra,* quoting *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

**10.** *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

**11.** The Fifth Circuit defined official policy in two ways: first, an actual policy statement officially promulgated and ·adopted by the municipality; second, as a persistent or widespread practice by city officials or employees that, although not officially adopted by the municipality, constitutes a custom that fairly represents municipal policy. *Bennett, id.* at 862.

er a particular seizure falls within this limited authority to proceed without probable cause depends upon both the character of the official intrusion and its justification. *Id; see also United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983)(whether a particular intrusion must be supported by probable cause depends upon a balancing of the nature and quality of the intrusion against the importance of the governmental interests alleged to justify the intrusion).

▉▉▉▉▉ Likewise, probable cause to arrest depends upon whether officers possessed knowledge that would warrant a prudent person's belief that the suspect had already committed or was committing a crime. *Sorenson v. Ferrie*, 134 F.3d 325 (5th Cir.1998). Texas law enumerates certain circumstances and offenses for which an offender may be arrested without a warrant. Tex. Code Crim. Pro. §§ 14.01, *et seq.* The existence of exigent circumstances is paramount to a warrantless arrest. Exigent circumstances exist when officers are responding to an emergency, pursuing a fleeing suspect, or preventing the destruction or removal of contraband. *Vale v. Louisiana*, 399 U.S. 30, 35, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970).

On the basis of the pleadings, this court cannot say that Spears' conduct was objectively reasonable as a matter of law.

### 1. The Calls to Plaintiff's Property

Spears learned, at the time of the first call to plaintiff's property, that no offense had been committed. This is the knowledge that he possessed at the time of the second call. He later testified in his deposition that at the time of the second call, he became concerned that plaintiff and his son may have had an argument, that plaintiff was intoxicated, and that plaintiff may have had an argument with the neighbor who made the call regarding shots fired. It is unclear what upon what facts Spears relies on to form these conclusions. This factual dispute gives rise to a genuine issue of material fact in whether Spears

possessed reasonably trustworthy facts and circumstances that would lead a man of reasonable prudence to believe that the instrumentality of a crime or evidence of a crime would be found, or that a crime had been committed on plaintiff's property.

Based upon the information available to Spears at the time of the second call when he made his decision to arrest plaintiff and search his property, both without a warrant, his actions were unreasonable under the totality of the circumstances. At the time of the second call, Spears and the other officers were trespassing on plaintiff's property by climbing the locked fence. Tex. Penal Code § 30.05(2)(B). Plaintiff was justified in protecting his property from trespassers with the use of force. *Id.* at § 9.41. Spears even acknowledged that it was reasonable for plaintiff to come out onto the porch with a gun to investigate unknown persons in his yard. Clearly there is a factual dispute as to whether an offense occurred within the presence of the officers, which again precludes summary judgment on the issue of qualified immunity.

### 2. Use of Excessive Force

▉▉▉▉ The Fifth Circuit employs a three part test for analyzing excessive use of force claims under the Fourth Amendment. Plaintiff must show: (1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need, and the excessiveness of which was (3) objectively unreasonable. *Spann v. Rainey*, 987 F.2d 1110, 1115 (5th Cir. 1993); *see also Harper v. Harris County*, 21 F.3d 597 (5th Cir.1994) (acknowledging the Supreme Court's elimination of the "significant injury" prong of the test in *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)). The Supreme Court has set the standard for this inquiry as follows:

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the

scene, rather than with the 20/20 vision of hindsight ... [T]he "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to the underlying intent or motivation.

*Graham, supra.* Likewise, not every "push or shove" even if it may later seem unnecessary violates the Fourth Amendment. *Id.*

In order to show excessive use of force, it must be shown that the force used by the officer exceeded the force reasonably necessary to place the arrestee in custody. Again, there is a factual dispute as to the procedure used to handcuff and arrest plaintiff; however, this merely raises a question for the jury.

### 3. Liability of the County

■■■ The allegations against the county based upon the Fourth Amendment, to the extent that the city holds any liability for the investigation, arrest, and search will only survive if plaintiff can demonstrate a governmental custom, ordinance, or regulation (or lack of any of these) that deliberately led to a Fourth Amendment violation, and that such amounted to a deliberate indifference to plaintiffs' rights. The deliberate indifference must be the cause in fact of the alleged constitutional deprivation. *See Brown v. Bryan County,* 53 F.3d 1410 (5th Cir.1995), *rev'd on other grounds,* 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). Plaintiff alleges that the investigation, arrest, and search were in compliance with city policies which are unconstitutional.[12]

Taking these allegations as true, plaintiff can only attach liability to the city if he can establish that a policy exists which is constitutionally incorrect, and that the officer followed that policy. The evidence

reflects that Hardin County maintains only one copy of the Operations and Procedures Manual for the entire Sheriff's Department. There is no discussion of the elements or laws regarding warrantless arrest, search, and seizure within this single copy of the manual. Additionally, County Attorney David Sheffield testified that he has never had a policy of requiring officers to swear to the complaints they file. Texas Code of Criminal Procedure and relevant case law requires complaints to be sworn. *See* TEX. CODE CRIM. PRO. art. 15.05; *see also Brent v. State,* 916 S.W.2d 34 (Tex.App.—Houston [1st Dist.] 1995)(holding that the signature of the affiant on the complaint represents his sworn oath).

These factors present a genuine issue of material fact as relates to the training and supervision of officers by Hardin County, and precludes summary judgment as a matter of law.

### Conclusion

Summary judgment is to be granted where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. FED R. CIV. P. 56(c). Movant carries the burden of persuasion, and has carried this burden with respect to the issue of qualified immunity as to the individual officer and the city. After the movant has presented a properly supported motion for summary judgment, the burden shifts to the nonmoving party to show with significant probative evidence that there exists a genuine issue of material fact.

This court finds that there is a genuine issue as to many material facts regarding the issue of qualified immunity as to the officer and the county; therefore, defendants are not entitled to summary judgment.

---

12. Plaintiff claims that the filing of false charges was also pursuant to a custom or

policy of the county.