**James R. HUCKER, Plaintiff,**

v.

**CITY OF BEAUMONT, et al., Defendants.**

**No. CIV.A. 1:99CV40.**

United States District Court, E.D. Texas, Beaumont Division.

May 18, 2001.

George Michael Jamail, Reaud Law Firm, Beaumont, TX, Richard M. Schechter, Houston, TX, for Plaintiff.

Tyrone Cooper, Assistant City Attorney, City of Beaumont, Beaumont, TX, for City of Beaumont, White, and Jagneaux.

## MEMORANDUM OPINION

COBB, District Judge.

Before the Court is Defendants City of Beaumont's, Earl White's and Brian Jagneaux' (collectively, "City of Beaumont" or "City") Motion for Summary Judgment [Dkt # 58] and Amended Motion for Summary Judgment [Dkt # 88]. The Court having reviewed the motions and responses on file is of the opinion that the Defendant City of Beaumont's Motion for Summary Judgment and Amended Motion for Summary Judgment be DENIED.

## I. Background.

On August 1, 1997, Plaintiff James Hucker was involved in a family altercation at his Beaumont, Texas, home during which he apparently made a threat to burn the house down out of anger toward his children. He later set fire to a paper towel and then carried the burning paper outside the house, falling down and injuring his leg in the process. At some point, one piece of furniture inside the home caught fire. Hucker claims he was not the cause of that fire. While he remained outside, sitting on the edge of the home's porch nursing his leg, fire and police personnel arrived and extinguished the burning furniture.

During this time, Beaumont emergency medical services personnel tended to Mr. Hucker and his injured leg. Mr. Hucker declined their offered ride to a hospital, on the basis that he would have one of his children drive him there and save the cost of ambulance transport.

Beaumont Fire Department arson investigator Captain Earl White determined that the fire inside the Hucker home was deliberately set and, based on the reports of neighbors and family members regarding the earlier altercation, decided to arrest Mr. Hucker. Captain White had not personally observed any act of arson.

The claims of the various parties as to what transpired next diverges. In Mr. Hucker's version, Captain White approached him from behind and forcibly pushed him off the porch, knocking him to the ground and inducing further and greater injury to his leg. Mr. Hucker then asserts that Captain White obtained the assistance of Officer Brian Jagneaux to carry Mr. Hucker, over his objections that he was in pain and while dropping him to the ground along the way, to Officer Jagneaux' police car. In the process, Mr.

Hucker claims that Captain White removed Mr. Hucker's belt, tied Mr. Hucker's legs together ("hog-tying") and carried Mr. Hucker by the belt while Officer Jagneaux carried him by his upper body. Captain White's version, on the other hand, is that he did not knock Mr. Hucker to the ground, but did arrest him and assisted him to Officer Jagneaux' police car.

Once in the car, Mr. Hucker says that he cried out in pain and asked to be taken to the hospital for his injured leg. It is uncontroverted that Officer Jagneaux radioed the Jefferson County Correctional Facility to inquire if the jail personnel would accept someone injured in Mr. Hucker's manner and that the response was to bring Mr. Hucker to the jail.

At the jail, Mr. Hucker crawled into the jailhouse. The attending police officers did not carry nor assist him. He was handcuffed to a bench for some period of time and eventually placed in a jail cell. In response to his reported cries of pain, medical personnel from Correctional Medical Services, Inc., ("CMS") examined him and decided that there was nothing wrong with him. He was, however, transferred to the jail infirmary where he remained incarcerated. There was no doctor to examine him. He remained in jail without doctor's examination for three days.

Ultimately, Mr. Hucker was examined by a doctor, who ordered his transport to a hospital. He was diagnosed with a comminuted fracture of the leg extending into the knee. The arson claim against him was never prosecuted by the district attorney. Mr. Hucker was subsequently released from custody.

Plaintiff Hucker is suing the City of Beaumont, Captain White and Officer Jagneaux, and other defendants including Jefferson County, CMS, and certain employees of those entities, for violations of his rights under the federal constitution and under state law. In the immediate issue at bar, Defendants City of Beaumont, Captain White and Officer Jagneaux seek summary judgment.

## II. Standard on Summary Judgment.

Rule 56(c) of the Federal Rules of Civil Procedure allows a court to grant summary judgment on issues presenting no genuine issue of material fact. Summary judgment is proper when the movant is able to demonstrate that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 585–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A fact is material if it might affect the outcome of a case under the governing substantive law. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505, 91 L.Ed.2d 202. It is unnecessary for the movant to negate elements of the non-movant's case. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 885–86, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

Once the material facts are assessed, the court must determine whether the evidence reveals the presence of genuine factual issues. A genuine issue exists when, in the context of the entire record, a reasonable fact-finder could return a verdict for the non-movant. *Id.* The court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment. *See Eastman Kodak v.*

*Image Technical Services,* 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992); *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356 (1986); *Lemelle v. Universal Mfg. Corp.,* 18 F.3d 1268, 1272 (5th Cir.1994). However, this favorable presumption for the non-movant exists only when the non-movant presents an actual controversy of fact. *See Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994).

To avoid a summary judgment, the nonmoving party must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case. Unsubstantiated assertions of an actual dispute will not suffice. *See Thomas v. Price,* 975 F.2d 231, 235 (5th Cir.1992)(citing *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2553–54, 91 L.Ed.2d 265). Once the moving party presents the district court with a properly supported summary judgment motion, the burden shifts to the nonmoving party to show that summary judgment is inappropriate. *See Lusk v. Foxmeyer Health Corp.,* 129 F.3d 773, 777 (5th Cir.1997). In doing so, the nonmoving party may not rest upon the mere allegations or denials of its pleadings, and unsubstantiated or conclusory assertions that a fact issue exists will not suffice. *Id.* (citing *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14, 91 L.Ed.2d 202).

### III. Plaintiff's Procedural Objections to Summary Judgment.

The plaintiff raised several procedural objections in his response in opposition to the original motion for summary judgment. Although some of the procedural defects he pointed out were repaired in the defendants' amended motion for summary judgment, the plaintiff's objections are well-stated.

The City of Beaumont's original Motion for Summary Judgment includes entire de-

positions coupled with various other documents lumped together as individual "Exhibits." For example, a reference is made to "the care given to the Plaintiff at the scene [being] clearly established by the deposition testimony of Mr. Hart, together with the exhibits attached thereto, all of which are attached hereto as Exhibit 'B'...." *See Defendants' [Original] Motion for Summary Judgment* at 4. Exhibit B included fifty-three pages of deposition and six pages of other documents, all otherwise unannotated. Similarly, Exhibit C included sixty-four pages of deposition and sixteen pages of other documents, not annotated with any particularity in the motion. Eastern District of Texas Local Rules of Court require that a motion for summary judgment or statements in opposition thereto be supported by appropriate citations to proper summary judgment evidence, which means excerpted evidentiary materials attached to the motion or the response with specific reference to page and line number and with highlighting as appropriate. *See* E.D. TEX. LOCAL R. CV–7(b), CV–56(b)–(d). This Court will not "scour the record in an attempt to determine whether the record contains an *undesignated* genuine issue of material fact for trial before entering summary judgment." *See Id.,* CV–56(c) (emphasis added). While primarily aimed at statements in opposition to summary judgment, the Court will apply no lower standard to a movant's motion.

This Court will not deny the City of Beaumont's motion solely on the basis that it is improperly supported with annotated summary judgment evidence, primarily because such deficiencies were repaired to some degree in the City's Amended Motion for Summary Judgment. However, even that amended motion contained deficiencies. Notably, the referenced Exhibit E, excerpts of Plaintiff Hucker's deposition

testimony, was missing from the motion submitted to the Court.

One procedural error will weigh against the City of Beaumont. As discussed, *infra*, the failure of Officer Brian Jagneaux to submit an answer pleading the affirmative defense of qualified immunity to Plaintiff's Second Amended Complaint bars such a claim in the City's Amended Motion for Summary Judgment.

## IV. Immunity.

Defendants' motion is based on various assertions. First, defendants seek summary judgment for Earl White and Brian Jagneaux on the basis that each of them enjoys qualified immunity under federal law; second, that each of the two individuals enjoy official immunity under Texas state law for performing discretionary acts as government officials; third, that the City of Beaumont as an entity has no municipal liability under either federal or Texas state laws.

### A. Captain Earl White and Officer Brian Jagneaux.

Plaintiff Hucker has asserted the following causes of action against Captain White and Officer Jagneaux:

24. White and Jagneaux are liable to Plaintiff James Hucker under 42 U.S.C. § 1983 for violating James Hucker's rights under the Fourth and Fourteenth Amendments. Defendants used unnecessary and excessive force in arresting, detaining, and transporting Hucker, executed a warrantless arrest without probable cause when no exigent circumstances existed, and acted with deliberate indifference to James Hucker's rights to medical care while he was in their custody. Each violation by Defen-

dant, either individually or in conjunction with others, legally caused Hucker's injuries and damages.

25. White and Jagneaux both committed assault and battery on plaintiff James Hucker. Each violation by each Defendant, either individually or in conjunction with others, legally caused Hucker's injuries and damages.

26. White and Jagneaux each falsely arrested and falsely imprisoned James Hucker. Each violation by each Defendant, either individually or in conjunction with others, legally caused Hucker's injuries and damages.

*See Plaintiff's Third Amended Complaint* at 11.[1]

### 1. Qualified Immunity.

Defendants assert that Captain White and Officer Jagneaux enjoy qualified immunity from the plaintiff's claims because they are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

When a defendant pleads qualified immunity, the court must first determine whether the plaintiff has alleged a clearly established constitutional right. *See Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Waller v. Spears,* 61 F.Supp.2d 574, 577 (E.D.Tex.1999). If the plaintiff has done so, the court must determine whether the defendant's actions were objectively reasonable under clearly established law at the time of the conduct in question. *See Id.* Qualified immunity will apply if an officer could have reason-

---

1. Plaintiff has entered a motion for leave to file a Fourth Amended Complaint. This Court has not yet ruled on that motion. The motion for summary judgment at hand is based on Plaintiff's Second and Third Amended Complaints.

ably believed his actions lawful, in light of clearly established law and the information the arresting officer possessed at the time of the conduct in question. *See Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). The court will not employ the "20/20 vision of hindsight" in determining reasonableness. *See Graham v. Connor,* 490 U.S. 386, 396–97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Ample room remains for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law. *See Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

Qualified immunity is an affirmative defense requiring the defendant to both plead and establish his entitlement to immunity. *See Tamez v. City of San Marcos,* 118 F.3d 1085, 1091 (5th Cir.1997), *cert. denied,* 522 U.S. 1125, 118 S.Ct. 1073, 140 L.Ed.2d 132 (1998). Once a complaint is served on a defendant, that defendant shall serve an answer or responsive pleading within twenty days of being served with the summons and complaint, or within sixty days after the date when a request for waiver was sent if service of summons was timely waived. *See* Fed. R. Civ. P. 12(a)(1)(A),(B). Every defense shall be asserted in the responsive pleading. *See Id.* 12(b).

■ Defendant Earl White was named a defendant in plaintiff's Original Complaint. In conjunction with co-defendant City of Beaumont, he timely filed an answer asserting the defense of qualified immunity. Defendant Brian Jagneaux was named a defendant in plaintiff's Second Amended Original Complaint filed on September 2, 1999. Neither the City of Beaumont nor Officer Jagneaux entered an answer to that amended complaint. On October 31, 2000, the City of Beaumont defendants entered their first Motion for Summary Judgment asserting,

*inter alia,* the affirmative defense of qualified immunity on Captain White's and Officer Jagneaux' behalf. Following plaintiff's response in opposition to the motion, pointing out that Officer Jagneaux had never pleaded the defense of qualified immunity, an answer was finally entered on behalf of Officer Jagneaux on December 29, 2000. Although the City of Beaumont defendants subsequently entered an Amended Motion for Summary Judgment on February 28, 2001, this Court holds that Officer Jagneaux is barred from asserting the defense of qualified immunity under Rule 12(b).

As to Captain White, a claim of qualified immunity rests on a determination of the objective reasonableness of his actions during the events alleged and whether a factfinder could determine that those actions violated a statutory or constitutional right of the plaintiff.

■ Plaintiff alleges he was arrested without warrant or probable cause. Both plaintiff and defendant point to Beaumont Police Department Directive 01.28.00, titled "Arrest," signed by Chief of Police Tom Scofield and in effect at the time of the incident. It states, in pertinent part:

C. When Felony Has Been Committed Outside View of Officer (CCP Art. 14.04)

1. "Where it is shown by satisfactory proof to a peace officer upon representation of a *credible person,* that a *felony* has been committed, and that the offender is *about to escape,* so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused."

*See* Directive 01.28.00 ¶ IV.C (emphasis in original). This directive comports with the requirement for the existence of exigent circumstances under the Fourth Amendment to the U.S. Constitution before effecting an arrest without a warrant. Exi-

gent circumstances exist when officers are responding to an emergency, pursuing a fleeing suspect, or preventing the destruction or removal of contraband. *See Vale v. Louisiana,* 399 U.S. 30, 35, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970); *Waller* 61 F.Supp.2d at 579 (E.D.Tex.1999).

Captain White asserts that he received information from credible witnesses at the scene who related Mr. Hucker's earlier threats regarding burning down the house. On that basis, and having observed the burn pattern surrounding the chair which had caught fire, Captain White determined that Mr. Hucker's continued presence constituted a "continuing threat to the safety of the inhabitants of the structure and the further destruction of the property." *See Defendants' Amended Motion for Summary Judgment* at 8. He does not assert that a state of emergency existed when he examined the residence, nor that Mr. Hucker was fleeing the residence, nor that he was preventing the destruction or removal of contraband. Further, he does not assert that Mr. Hucker was "about to escape" as required under the Beaumont Police Department Arrest Directive. Indeed, Plaintiff Hucker has offered summary judgment evidence that, rather than trying to escape, he was injured and being examined by emergency medical technicians.

Captain White claims that Justice of the Peace Vi McGinnis, sitting as a magistrate, made an after-the-fact determination that probable cause existed. To the extent that is true, such a determination should have been made and a warrant issued before any arrest. The City of Beaumont would have the chain of causation for a warrantless arrest broken because of a magistrate's review, citing *Taylor v. Gregg,* 36 F.3d 453, 456 (5th Cir.1994). However, in that case, the arresting officers personally observed the plaintiffs' lawless conduct, which directly interfered with their duties. The plaintiffs were subsequently brought before a United States Magistrate and later indicted. The case at bar is significantly different, involving alleged conduct not observed by Captain White nor any witness; nor was the subject of the arrest interfering with Captain White's official duties or attempting to escape.

■ Contrary to plaintiff's excessive force complaint, Captain White further asserts that his actions did not constitute excessive force. In a fact situation very similar to the one at bar, such actions by a law enforcement officer have been found to create a fact question relating to the use of excessive force sufficient to overcome a motion for summary judgment. *See Waller v. Spears,* 61 F.Supp.2d 574, 579–80 (E.D.Tex.1999). The court in *Waller* employed the Fifth Circuit Court of Appeals three part test for analyzing excessive use of force claims under the Fourth Amendment of the U.S. Constitution. Under that test, a plaintiff must show: (1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need, and the excessiveness of which was (3) objectively unreasonable. *See Spann v. Rainey,* 987 F.2d 1110, 1115 (5th Cir.1993). The magistrate judge found that a fact issue existed for jury determination after a peace officer entered a plaintiff's residential porch, slammed him against the wall and handcuffed him where no probable cause existed for an arrest, a situation which made such excessive force objectively unreasonable. Here, Mr. Hucker offers summary judgment evidence, by deposition and the testimony of expert witnesses, that his injury occurred in full or in part when Captain White allegedly shoved him off his porch and onto the ground, and by Captain White's "hog-tying" him with his own belt to facilitate carrying him to Officer Jagneaux' po-

lice car. As noted *supra*, a fact issue exists as to whether probable cause existed for an arrest or any application of force.

Additionally, and relating to Captain White's claim of official immunity under state law (*see infra*) as well as to his qualified immunity claim, Beaumont Police Department Directive 01.05.01, signed by Chief of Police Tom Scofield and in effect at the time of the incident, governs "Use of Force." In detail, it provides for the proper employment of a "continuum of force," varying levels of which any given officer may need to employ. The City of Beaumont claims that Captain White performed his discretionary duties within the boundaries of the City's use of force policy and is thus entitled to qualified immunity. However, the City admits, in deposition testimony, that if Captain White had shoved Mr. Hucker, from behind, from his sitting position on the front porch of his home with such force that he fell to the ground and possibly further injured his leg, and subsequently "hogtied" Mr. Hucker to carry him with Officer Jagneaux to the police car, such conduct would not be in accordance with the use of force policy.

If these circumstances are true, it is difficult to see how Captain White could have reasonably believed he was proceeding within the law and within the City's policy. A question of fact on the issues of warrantless arrest and of excessive force exists and Captain White's motion for summary judgment must fail.

On these bases, because Officer Jagneaux did not timely plead the defense of qualified immunity and because a question of fact remains regarding Captain White's conduct at the time of the arrest, defendants' motion for summary judgment on the issue of individual qualified immunity will be denied.

## 2. Official Immunity.

■ Both Captain White and Officer Jagneaux also claim official immunity as government employees in the scope of their employment. To establish entitlement to official immunity under state law, a government defendant must prove he (1) was performing discretionary duties, (2) was acting within the scope of the employee's authority, and (3) acted in good faith. *See City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex.1994). Plaintiff Hucker's state law claims against Captain White and Officer Jagneaux relate to alleged assault and battery, false arrest and false imprisonment.

■ As to Captain White's claim to official immunity, the same analysis employed as to qualified immunity under federal law will apply. That he was acting under his own discretion when he arrested Mr. Hucker is uncontested. However, as noted *supra*, there is an issue of fact whether Captain White performed his duties within the boundaries of the City of Beaumont Police Department's Arrest policy. Given the fact issue surrounding whether Captain White had probable cause to effect any arrest at that time, there is also a question of fact as to whether he acted in good faith. Additionally, whether Captain White employed the appropriate level of force in good faith under the totality of the circumstances and within the City of Beaumont Police Department's Use of Force policy will be a question of fact for a jury. On those bases, his motion for summary judgment on official immunity will be denied.

As to Officer Jagneaux, the plaintiff's summary judgment evidence is that the officer participated in handcuffing and transporting plaintiff to the officer's police car. In that regard, if plaintiff's rendition is to be believed, Officer Jagneaux would have been in the same position as Captain

White in terms of causing or aggravating plaintiff's injury and in participating in plaintiff's improper arrest. The response in opposition to the motion for summary judgment sufficiently establishes a fact issue that Officer Jagneaux' motion on the basis of official immunity will be denied.

## B. City of Beaumont—Municipal Immunity.

Plaintiff Hucker asserts the following claims against the City of Beaumont as violations of 42 U.S.C. § 1983:

1) Defendant had a practice or custom that amounted to a policy of ignoring, failing to provide and/or being deliberately indifferent to the medical needs of those citizens who had been arrested and were complaining of having been injured before or during an arrest.

2) Defendant had a policy, custom, practice, or procedure of allowing its employees to use excessive force in making an arrest.

3) Defendant failed to train its employees how to properly treat citizens who had been arrested and were complaining of an injury.

4) Defendant had a policy, custom, practice and/or procedure of allowing its employees to make warrantless arrests without complying with the law.

5) Defendant had a policy, custom, practice and/or procedure of allowing untrained employees to decide where to take prisoners and/or arrestees, to the hospital or jail.

*See Plaintiff's Third Amended Original Complaint* at 12.[2] Plaintiff also claims the City of Beaumont is liable for negligence under the Texas Tort Claims Act, Section 101.021(2) because city employees, in the course and scope of their employment, were negligent in their use or non-use of tangible personal property, which was a proximate cause of the plaintiff's injuries. *Id.*

The City of Beaumont's § 1983 argument on summary judgment focuses almost entirely on the "failure to train" cause of action. The U.S. Supreme Court has held that municipalities can be held liable under § 1983 when the action alleged to be unconstitutional implements a custom or policy adopted by that body's officers. *See Monell v. Dept. of Social Services of City of New York,* 436 U.S. 658, 713, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Inadequacy of police training may serve as the basis of municipal liability under § 1983 if the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. *See City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Further, deliberate indifference is a stringent standard of fault which requires proof that a municipal actor disregarded a known or obvious consequence of his action. *See Board of County Comm'rs. of Bryan County v. Brown,* 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

The City of Beaumont asserts that its official custom or policy regarding medical

**2.** This Court notes that the causes of action against the City of Beaumont in Plaintiff's proposed Fourth Amended Complaint are essentially the same as those in the Second and Third Amended Complaints on which the Defendant's Motion for Summary Judgment is based, with the exception that the proposed Fourth Amended Complaint drops the fourth cause of action against Defendant City of Beaumont for warrantless arrests. As this Court as not yet ruled on Plaintiff's Motion for Leave to File the Fourth Amended Complaint and because the instant motion for summary judgment is based on Plaintiff's Second and Third Amended Complaints, such change makes no difference to the opinion herein.

treatment for prisoners is memorialized in its Beaumont Police Department Directive No. 03.34.00, dated October 3, 1994, and effective at the time of this incident. The directive was signed by Chief of Police Tom Scofield and the policy encompasses the treatment of prisoners by both the Beaumont Police Department and the Beaumont Fire Department in the course of investigations, arrests and handling of prisoners. That policy requires that a prisoner needing either emergency or non-emergency medical attention "should be transported to the emergency facility of his or her choice within the city limits." The City's policy regarding Use of Force was discussed *supra*. The City claims that no other policies exist and that the actions of Captain White and Officer Jagneaux, even if improper, do not rise to the level of deliberate indifference required of a municipality to invoke liability under § 1983. Further, the City asserts that a municipality cannot be held liable under § 1983 for the actions of its employees under a theory of *respondeat superior* or vicarious liability. On those bases, it seeks summary judgment from the § 1983 claim.

The assertion that the City of Beaumont cannot be held vicariously liable for the actions of its employees under § 1983 is correct. *See Monell v. Dept. of Social Services of the City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (concluding that a municipality cannot be held liable under § 1983 on a *respondeat superior* theory solely because it employs a tortfeasor). However, Plaintiff Hucker is not asserting a vicarious liability claim against the City of Beaumont for the actions of Captain White and Officer Jagneaux. Instead, Mr. Hucker presents summary judgment evidence in the form of the deposition testimony of Captain Brad Pennison to the effect that officers who are transporting prisoners requiring medical care have discretion as to whether to take an injured (or complaining) prisoner to a hospital or to the Jefferson County Detention Center. Captain Pennison also testified that the City of Beaumont provided no specialized training on the issue of how to distinguish between those who should go to minor care, those who should go to the jail, or those who should go to the hospital emergency room. Mr. Hucker points out that the Jefferson County Detention Center has limited medical facilities, no X–Ray machine for the diagnosis of fractured bones or other internal injuries and a limited on-site medical staff which does not include a full-time physician. The plaintiff points to Captain Pennison's testimony on the City's lack of training and apparent custom and policy providing wide discretion to arresting officers (despite its written policy requiring formal medical attention) coupled with the alleged actions of Captain White and Officer Jagneaux to assert that the City of Beaumont is thus guilty of deliberate indifference to prisoners' constitutional right to appropriate medical attention.

According to the City of Beaumont, the focus of the standard by which deliberate indifference is established must be on the adequacy of the training program in relation to the task the particular officers must perform, citing *Canton* 489 U.S. 378, 389, 109 S.Ct. 1197. However, where a training program or lack of a training program will result in a risk that an unconstitutional deprivation of rights will occur, municipal liability attaches under § 1983 for any such result. In this case, whether Beaumont's training program was adequate, or indeed whether it existed at all, directly relates to observing Fourth and Fourteenth Amendment rights under the U.S. Constitution when handling prisoners who require medical aid. Plaintiff Hucker has provided sufficient summary judgment evidence to raise a ques-

tion of fact in this matter. Equally telling, the City of Beaumont has not presented one single piece of evidence to establish that it has a training program *at all* governing the proper handling of prisoners with medical problems.

The City has failed to address, except in the most oblique terms, Mr. Hucker's assertion that it harbors a custom or policy of permitting the use of excessive force and is guilty of failing to properly train its fire and police department employees in the use of reasonable force. Again, most telling is that the City offers no piece of evidence to show that it has any training program on the subject of excessive force whatsoever. Mr. Hucker has provided ample summary judgment evidence by which a reasonable factfinder could find the City of Beaumont liable under § 1983 on this claim.

On these bases, Defendant City of Beaumont's motion for summary judgment on the issue of liability under § 1983 will be denied.

The City of Beaumont also asserts that it is free from liability on plaintiff's state law claims under the Texas Tort Claims Act because the actions of Captain White and Officer Jagneaux constitute an intentional tort for which the municipality has not waived immunity.

The plaintiff's claim under Texas state law is as follows:

> The City of Beaumont is also liable to Plaintiff James Hucker under the Texas Tort Claims Act, Section 101.021(2). City employees, in the course and scope of their employment, were negligent in their use or non-use of tangible personal property, and such conduct was a proximate cause of Hucker's injuries and damages.

*See Plaintiff's Third Amended Complaint* at 12. The Texas Tort Claims Act establishes in pertinent part that a governmental unit in the state is liable for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." *See* TEX. CIV. PRAC. & REM. CODE § 101.021(2).

Notwithstanding the plaintiff's characterization of his claim as being one for negligence, the City of Beaumont claims that the underlying actions allegedly committed by Captain White and Officer Jagneaux constituted false arrest, an intentional tort. Additionally, the City characterizes all of the plaintiff's allegations as constituting claims for false imprisonment, assault and battery. The City asserts that all these claims are invalid against it as a municipality because intentional torts are specifically excluded from any waiver of sovereign immunity under TEX. CIV. PRAC. & REM. CODE § 101.057(2). Further, the City cites an opinion by this Court for the proposition that the intentional tort exception to waiver of municipal liability cannot be circumvented by simply pleading negligence when the act upon which a claim is based is actually an intentional tort. *See Huong v. City of Port Arthur,* 961 F.Supp. 1003, 1008 (E.D.Tex.1997).

This Court does not agree that the actions alleged to have been committed by Captain White and Officer Jagneaux must necessarily be construed only as constituting one or more intentional torts. In *Huong,* the defendant officer shot and killed the plaintiff's decedent, deliberately and with his service pistol, when faced with imminent threat of bodily harm or death. The plaintiffs claimed the officer used excessive force in their state law based cause of action. It was clear that the intent of the officer was to shoot the threatening decedent and in so doing to

employ deadly force. The use of deadly force was reasonable under the circumstances of that case, where the decedent threatened the officer with a knife and with a pot of hot grease. The act of the officer accomplished the officer's intent and there was no negligence in achieving that intent.

■ Here, in contrast, the City of Beaumont previously argued that Captain White and Officer Jagneaux specifically did not intend to falsely arrest or imprison, nor to commit assault or battery upon Mr. Hucker, but to peaceably place him under arrest and to transport him to jail. Plaintiff's complaint against the City of Beaumont does not assert any intentional tort, but does assert negligence by the officers in their use of tangible personal property, a situation which may waive immunity under the Texas Tort Claims Act. Although a clearly intentional act may not be legitimately characterized as negligence in an effort to bypass state sovereign immunity, *see Huong* 961 F.Supp. at 1008, there is no impediment to a proper characterization of negligence where the facts may show that officers in the course and scope of their duty improperly or negligently used tangible personal property during an arrest, resulting in an injury. Under Texas case law, the fact that an action for an intentional tort is barred does not prevent an injured party from pursuing a claim for simple negligence arising out of the same facts. *See Jefferson County v. Sterk,* 830 S.W.2d 260, 261 (Tex.App.—Beaumont 1992, *no writ history*). *See also Texas Dept. of Mental Health and Mental Retardation v. Petty,* 848 S.W.2d 680, 685 (Tex. 1992) (holding that the Texas Tort Claims Act does not preclude recovery for injuries resulting from the negligent use of tangible property when the same set of facts would support a claim of the intentional tort of false imprisonment), *overruled on other grounds, Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex.1995); *Dallas County*

*Mental Health & Mental Retardation v. Bossley,* 968 S.W.2d 339, 342–43 (Tex.1998) (noting that for a waiver of immunity to the Texas Tort Claims Act to ensue, the "tangible property" must be a proximate cause of the plaintiff's injury).

■ Plaintiff Hucker has provided summary judgment evidence supporting his version of the facts of this case and of his complaint of negligence under the Texas Tort Claims Act. A factfinder could determine, on plaintiff's summary judgment evidence, that the plaintiff's injuries were caused by the negligence of the City's employees. Defendant City of Beaumont has focused its effort in summary judgment on arguing the same set of facts must only be interpreted as an intentional tort for which no waiver of sovereign immunity exists. Case law does not sufficiently support the City's position and the City has provided no other summary judgment evidence to controvert the facts as stated by the plaintiff. On that basis, Defendant City of Beaumont's Motion for Summary Judgment on the plaintiff's state law claims will be denied.

## V. Conclusion.

Because Captain White and Officer Jagneaux are not entitled to summary judgment on the issues of qualified immunity and official immunity and the City of Beaumont itself is not entitled to summary judgment under 42 U.S.C. § 1983 or under the Texas Tort Claims Act, it is, therefore,

ORDERED, that Defendant City of Beaumont's original Motion for Summary Judgment [Dkt # 58] be DENIED. It is further

ORDERED, that Defendant City of Beaumont's Amended Motion for Summary Judgment [Dkt # 88] be DENIED.