In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00046-CV
______________________________


DAVID DURBIN, BRENDA DAVIS, INDIVIDUALLY,
AND BRENDA DAVIS, AS NEXT FRIEND
OF BRENDA DURBIN, Appellants
 
V.
 
CITY OF WINNSBORO, Appellee


                                              

On Appeal from the 402nd Judicial District Court
Wood County, Texas
Trial Court No. 2002-155A


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

          Jimmy Durbin died in a motorcycle accident while being pursued by Winnsboro city
police officer Tony Browning. Jimmy's parents, David Durbin and Brenda Davis, and minor
daughter, Brenda Durbin (collectively, the Durbins), brought suit against Browning for
wrongful death and against the City of Winnsboro (Winnsboro) under respondeat superior
and negligent entrustment, and seeking exemplary damages. The Durbins alleged in their
original petition Browning was in pursuit of Jimmy when Browning purposefully "bumped"
Jimmy's motorcycle with his patrol car, causing Jimmy to wreck. Browning then ran over
Jimmy with his patrol car, killing him. 
          Winnsboro filed a plea to the jurisdiction of the court and a motion for summary
judgment, contending that the Durbins had alleged an intentional tort and that their claim
was therefore barred by the Texas Tort Claims Act. See Tex. Civ. Prac. & Rem. Code Ann.
§ 101.001, et seq. (Vernon 1997 & Supp. 2004). The trial court agreed, dismissed the
Durbins' claims against Winnsboro, and severed those claims from all other causes of
action, rendering the dismissal final for purposes of appeal.


 The Durbins appeal,
contending the trial court erred in sustaining Winnsboro's plea to the jurisdiction and in
granting the motion for summary judgment. The Durbins also complain the trial court
denied them an opportunity to amend their pleadings. 
Standard of Review
          The State, its agencies, and subdivisions, such as cities, generally enjoy sovereign
immunity from tort liability unless immunity has been waived. See Tex. Civ. Prac. & Rem.
Code Ann. §§ 101.001(3), 101.025; County of Cameron v. Brown, 80 S.W.3d 549, 554
(Tex. 2002); City of San Benito v. Ebarb, 88 S.W.3d 711, 719 (Tex. App.—Corpus Christi
2002, pet. denied). If a defendant is cloaked with governmental immunity, a trial court
lacks subject-matter jurisdiction. Tex. Dep't of Transp. v. Jones, 8 S.W.3d 636, 638 (Tex.
1999). The lack of subject-matter jurisdiction is properly raised by a plea to the jurisdiction. 
Id.
          A plaintiff has the burden to allege facts affirmatively demonstrating the trial court
has subject-matter jurisdiction. Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440,
446 (Tex. 1993). In a suit against a city, a plaintiff must allege consent to suit either by
reference to a statute or to express legislative permission. Jones, 8 S.W.3d at 638. Here,
the Durbins contend their petition alleged claims against Winnsboro within the Tort Claims
Act's limited waiver of sovereign immunity. See Tex. Civ. Prac. & Rem. Code Ann.
§ 101.021.
          We review de novo the trial court's ruling on a plea to the jurisdiction. See State
Dep't of Highways & Pub. Transp. v. Gonzalez, 82 S.W.3d 322, 327 (Tex. 2002); Mayhew
v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998). We must construe the pleadings
in the plaintiff's favor and look to the pleader's intent. Brown, 80 S.W.3d at 555; Peek v.
Equip. Serv. Co., 779 S.W.2d 802, 804 (Tex. 1989). A plaintiff bears the burden to allege
facts affirmatively demonstrating the trial court's jurisdiction to hear a case. Tex. Ass'n of
Bus., 852 S.W.2d at 446; Mission Consol. Indep. Sch. Dist. v. Flores, 39 S.W.3d 674, 676
(Tex. App.—Corpus Christi 2001, no pet.). A court deciding a plea to the jurisdiction is not
required to look solely to the pleadings, but may consider evidence and must do so when
necessary to resolve the jurisdictional issues raised. Bland Indep. Sch. Dist. v. Blue, 34
S.W.3d 547, 555 (Tex. 2000). The court should, of course, confine itself to the evidence
relevant to the jurisdictional issue. Id. If the plaintiff's pleadings are insufficient to
demonstrate the court's jurisdiction, but do not affirmatively show incurable defects in
jurisdiction, the proper remedy is to allow the plaintiff an opportunity to amend before
dismissal. Brown, 80 S.W.3d at 555; Peek, 779 S.W.2d at 805. 
          To prevail on a motion for summary judgment, a movant must establish that there
is no genuine issue as to any material fact and that the movant is entitled to judgment as
a matter of law. Tex. R. Civ. P. 166a(c). Summary judgment for a defendant is proper
when the defendant negates at least one element of each of the plaintiff's theories of
recovery or pleads and conclusively establishes each element of an affirmative defense. 
Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997); Wornick Co. v. Casas,
856 S.W.2d 732, 733 (Tex. 1993). 
          The movant has the burden of showing that there is no genuine issue of material
fact and that it is entitled to judgment as a matter of law. Nixon v. Mr. Prop. Mgmt. Co.,
690 S.W.2d 546, 548–49 (Tex. 1985). However, once the movant establishes it is entitled
to summary judgment, the burden shifts to the nonmovant to show why summary judgment
should not be granted. Casso v. Brand, 776 S.W.2d 551, 556 (Tex. 1989). In reviewing
a summary judgment, we accept all the nonmovant's proof as true and indulge every
reasonable inference in the nonmovant's favor. Sci. Spectrum, Inc., 941 S.W.2d at 911. 
All doubts about the existence of a genuine issue of a material fact must be resolved
against the movant. Johnson County Sheriff's Posse, Inc. v. Endsley, 926 S.W.2d 284,
285 (Tex. 1996).
Sovereign Immunity–Respondeat Superior 
          The Durbins pled that Winnsboro was liable for the acts of Browning under the
doctrine of respondeat superior. The Tort Claims Act creates a limited waiver of sovereign
immunity. See Tex. Civ. Prac. & Rem. Code Ann. § 101.021. In order for immunity to be
waived under the Act, the claim must arise under one of the three specific areas of liability
for which immunity is waived and the claim must not fall under one of the exceptions from
waiver. Alvarado v. City of Brownsville, 865 S.W.2d 148, 155 (Tex. App.—Corpus Christi
1993), rev'd & rendered on other grounds, 897 S.W.2d 750 (Tex. 1995). A governmental
unit in this state is liable for:
          (1)      property damage, personal injury, and death proximately
caused by the wrongful act or omission or the negligence of an employee
acting within his scope of employment if:
 
(A)the property damage, personal injury, or death arises
from the operation or use of a motor-driven vehicle or motor-driven equipment; and
 
(B)the employee would be personally liable to the claimant
according to Texas law; and

          (2)      personal injury and death so caused by a condition or use of
tangible personal or real property if the governmental unit would, were it a
private person, be liable to the claimant according to Texas law. 
 
Tex. Civ. Prac. & Rem. Code Ann. § 101.021.
          It is undisputed Winnsboro is a governmental unit. See Tex. Civ. Prac. & Rem.
Code Ann. § 101.001(3)(B). The pleadings and evidence showed that Jimmy's death
arose from the operation or use of a motor vehicle driven by a Winnsboro police officer
acting within the scope of his employment. The use of the patrol car by Browning in
striking Jimmy's motorcycle, as alleged in the petition, caused Jimmy's injury and death. 
The Durbins' cause of action, therefore, falls under Section 101.021 of the Tort Claims Act. 
           Although immunity may be waived under the provisions of Section 101.021, certain
acts are exempted from that waiver of immunity. The Act specifically excludes waiver for
a claim "arising out of assault, battery, false imprisonment, or any other intentional tort,
. . . ." Tex. Civ. Prac. & Rem. Code Ann. § 101.057(2). 
          Winnsboro contended in its plea to the jurisdiction and motion for summary
judgment that the Durbins' petition alleged an intentional tort and was therefore excluded
from the waiver of immunity under the Act. The Durbins' petition alleged the facts as
follows: 
          10. On or about September 12, 2001, Jimmy Durbin was riding his
motorcycle on State Highway 11, in Winnsboro, Texas. Tony Browning who
was a police officer for the city of Winnsboro began chasing Jimmy Durbin
on Highway 11. Tony Browning was driving a City of Winnsboro patrol car
and was on duty at that time. 
 
          11. Tony Browning decided that he would "bump" the motorcycle
driven by Jimmy Durbin. Tony Browning struck Durbin's motorcycle with his
patrol car causing the motorcycle to wreck and subsequently was run over
by Browning's patrol car. Jimmy Durbin was killed and his body
dismembered. 
 
In their response to Winnsboro's motion for summary judgment, the Durbins asserted
Browning bumped Jimmy's motorcycle "in order to make him stop." The Durbins claimed
Browning was negligent, careless, and reckless by failing to turn his motor vehicle to the
right or left in an effort to avoid the complained-of collision; by operating his motor vehicle
at a rate of speed which was greater than the speed at which a person of ordinary
prudence under the same or similar circumstances would have operated the vehicle; and
by purposefully striking the motorcycle with his vehicle, causing Jimmy to wreck and to be
struck and run over by the patrol car. 
          Winnsboro points to deposition testimony from Brenda Davis and David Durbin, who
both assert that their contentions in the lawsuit are that Browning purposefully struck
Jimmy's motorcycle. The Durbins insist that Winnsboro and Browning both deny Browning
struck Jimmy's motorcycle and that the issue is "hotly contested."


 
          Winnsboro contended in its plea to the jurisdiction and motion for summary
judgment that the Durbins' cause of action for negligent use of the patrol car is actually an
allegation of an intentional tort because the Durbins alleged Browning intended his acts. 
The Durbins contend they did not allege an intentional tort because they did not allege
Browning intentionally injured Jimmy. The Durbins cite Reed Tool Co. v. Copelin, 689
S.W.2d 404, 406 (Tex. 1985), and Bridges v. Robinson, 20 S.W.3d 104, 114 (Tex.
App.—Houston [14th Dist.] 2000, no pet.), overruled in part on other grounds, Telthorster
v. Tennell, 92 S.W.3d 457, 464 (Tex. 2002), in support of their position. 
          In Reed Tool Co., 689 S.W.2d at 405, the plaintiff sued her husband's employer for
loss of consortium for injuries he sustained on the job. Reed Tool contended the suit was
barred by the Workers' Compensation Act. Id. The plaintiff alleged her suit was not barred
by the Act because Reed Tool had intentionally caused her husband's injury by requiring
him to operate a machine Reed Tool knew was unsafe. Id. at 405–06. The Texas
Supreme Court noted that the fundamental difference between a negligence cause of
action and an intentional tort is not whether the defendant intended the acts, but whether
the defendant intended the resulting injury. Id. at 406. The court held that the intentional
failure to furnish a safe place to work does not rise to the level of intentional injury except
when the employer believes its conduct is substantially certain to cause the injury. Id. at
407.
          In Bridges, 20 S.W.3d at 107, a man was involved in an altercation with a manager
at a Dillard's department store. Dillard's security guards and Houston police officers
responded to the altercation. Id. at 107–10. They dragged the man to the manager's
office, "hog-tied" him, broke his ribs, and placed him on Dillard's curb. Id. He later died
from his injuries. Id. The deceased man's family brought suit against the City of Houston
under the Texas Tort Claims Act. Id. The city moved for summary judgment contending,
among other things, that under Section 101.057 it was immune from liability for the
intentional torts of its officers. Id. at 114. The city contended "hog-tying" and restraining
the deceased was an intentional tort in the category of false arrest, imprisonment, and
assault, which, as a matter of law, is not actionable under the Tort Claims Act. Id. The
Houston Court of Appeals cited the Restatement (Second) of Torts' definition of intent: that
"the actor desires to cause consequences of his act, or that he believes that the
consequences are substantially certain to result from it." Id. (citing Restatement (Second)
of Torts § 8A (1965)). The court went on to hold that "[t]he fundamental difference
between a negligence injury and an intentional injury is the specific intent to inflict injury." 
Id. (citing Reed Tool Co., 689 S.W.2d at 406). The Bridges court found that the plaintiffs
had pled that the police officers had negligently employed "hog-tie" restraints and that there
was no summary judgment proof the officers intended to injure or kill the deceased. The
court concluded the city had not established the appellees' claims as intentional torts;
therefore, Section 101.057 was inapplicable. 
          Winnsboro contends, however, that, if a plaintiff pleads an intentional act, that is
sufficient to plead an intentional tort under Section 101.057. Winnsboro cites several
cases it contends support that proposition. See Tex. Dep't of Pub. Safety v. Petta, 44
S.W.3d 575, 580 (Tex. 2001); City of Laredo v. Nuno, 94 S.W.3d 786, 789 (Tex.
App.—San Antonio 2002, no pet.); Tarrant County Hosp. Dist. v. Henry, 52 S.W.3d 434,
451 (Tex. App.—Fort Worth 2001, no pet.); Huong v. City of Port Arthur, 961 F.Supp.
1003, 1009 (E.D. Tex. 1997). These cases all hold that, when a plaintiff pleads facts which
amount to an intentional tort, no matter if the claim is framed as negligence, it is a claim
for an intentional tort and barred by the Tort Claims Act. None of these cases, however,
provide much detailed examination of what intent constitutes an intentional tort under the
Act. In the majority of these cases, the intent to injure can be inferred from the act alleged. 
          In Petta, 44 S.W.3d at 577, the plaintiff was stopped by officers for speeding. An
argument ensued over how much the plaintiff was exceeding the speed limit. Id. The
officer returned to his patrol car, and the plaintiff rolled up her windows and refused to exit
the vehicle. Id. The officer tried to open the door and started yelling obscenities. Id. The
incident escalated as the officer began beating the window with his nightstick and
threatened to break the glass. Id. at 577–78. The officer then allegedly aimed his
handgun at the plaintiff and threatened to kill her. Id. at 578. The plaintiff fled in her car,
and the officer pursued. Id. The officer shot at her tires more than once and pointed a
shotgun at her during the pursuit. Id. Several other officers eventually arrested the plaintiff
when the pursuit ended at her home. Id. The plaintiff sued the officer individually for
assault, battery, reckless conduct, and terroristic threat. Id. at 577. She also sued the
Texas Department of Public Safety under the Tort Claims Act, alleging the department was
liable for the officer's wrongful acts and negligence under the theory that the department
had negligently trained and supervised the officer. Id. 
          The court concluded that the plaintiff's claims against the department for negligent
training and supervision were barred by the intentional tort exclusion of the Act. Id. at 580. 
The court found that the allegations against the department were the same conduct that
formed the basis of her assault and battery claims against the officer. Id. The court found
the specific acts of "hitting the window, calling a tow truck, aiming the gun, blocking Petta
in with the cruiser, and firing at Petta's tires" were clearly intentional. Id. "The allegations
fit squarely within section 101.057's exclusion of claims arising out of assault, battery, and
false imprisonment." Id. The court, therefore, focused on whether the officer's acts were
intentional and did not analyze whether those actions were intended to cause injury. 
          In Tarrant County Hosp. Dist., 52 S.W.3d at 439, the plaintiff alleged that, while she
was working late at Tarrant County Hospital, a fellow employee locked the door so she
could not leave and then sexually assaulted her. She sued the hospital district for
negligence on the grounds that the hospital employee misused hospital property by
disabling the alarm system at the institute and using a key to lock the doors so she could
not escape his attack. Id. at 441. The court found these negligence claims by the plaintiff
were barred because they were intentional tort claims arising from a rape that fell within
the intentional tort exception to the Tort Claims Act's waiver of immunity from suit. Id.
(citing Delaney v. Univ. of Houston, 835 S.W.2d 56, 59 (Tex. 1992) (holding Tort Claims
Act's intentional tort exception to waiver of immunity from suit applies to complaints based
on intentional acts of government employees); Scott v. Prairie View A & M Univ., 7 S.W.3d
717, 719 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) (holding government has not
waived immunity from suit for government employees' intentional acts); Petta v. Rivera,
985 S.W.2d 199, 205–06 (Tex. App.—Corpus Christi 1998) (same), rev'd & rendered on
other grounds sub nom., Tex. Dep't of Pub. Safety v. Petta, 44 S.W.3d 575 (Tex. 2001)). 
The court, again, focused on the intentional nature of the act. The intent to injure,
however, could be inferred from the intentional act alleged, a rape. 
          In Nuno, 94 S.W.3d at 787, the plaintiff sued the City of Laredo for injuries she
suffered during her arrest. During her arrest for a traffic violation, the arresting officer
dragged her from the vehicle, threw her against the vehicle, hit her in the back with
handcuffs, and kicked her legs. Id. The plaintiff sued the city for negligence and gross
negligence for the officer's: (1) failure to properly apply the handcuffs used in the plaintiff's
arrest; (2) failure to properly place the plaintiff in the police vehicle; (3) failure to properly
apply the laws in impounding the plaintiff's vehicle; (4) assault of the plaintiff;
(5) negligence in arresting and physically injuring the plaintiff in front of her children; and
(6) negligent indifference in leaving the plaintiff's children stranded without a means to
return home. Id. at 788. 
          The court found that, although a governmental unit is immune from claims arising
out of intentional torts, an injured party may still pursue a separate negligence claim arising
out of the same facts. Id. at 789 (citing Young v. City of Dimmitt, 787 S.W.2d 50, 51 (Tex.
1990); Medrano v. City of Pearsall, 989 S.W.2d 141, 144 (Tex. App.—San Antonio 1999,
no pet.)). "[W]here the focus of a party's claim is on the governmental unit's negligent
conduct, not the intentional conduct of its employee, the claim will not be said to arise out
of the intentional tort." Id. (quoting Medrano, 989 S.W.2d at 144). "However, the
intentional tort exception cannot be circumvented merely by alleging that the governmental
unit was negligent in supervising the employee-tortfeasor." Id. (citing Delaney, 835 S.W.2d
at 60; Medrano, 989 S.W.2d at 144).
          The San Antonio Court of Appeals found that the focus of the claims asserted by
the plaintiff listed above was on the officer's intentional tortious conduct despite the
plaintiff's efforts to phrase the claims in terms of negligence. Id. For example, the officer's
failure to properly apply the handcuffs and failure to properly place the plaintiff in the police
vehicle were based on the officer's intentional tortious act of using excessive force to arrest
the plaintiff. Id. In addition, the officer's failure to properly apply the laws in impounding
the plaintiff's vehicle, and his negligent indifference in leaving her children stranded, relate
to his intentional decision to illegally seize the plaintiff's car. Id. (citing Petta, 44 S.W.3d
at 580 (holding claim that officer negligent in ignoring police procedure was intentional
act)). Further, the court found the assault of the plaintiff and the officer's actions in
arresting and injuring the plaintiff arose from the officer's intentional tortious conduct. Id. 
Again, the court focused on the officer's alleged intentional acts to determine whether an
intentional tort was alleged. The intent to injure, however, can also be inferred from the
intentional act alleged, the physical beating of the plaintiff.
          Winnsboro also contends that federal courts have focused on the intent to act, not
the intent to injure, in the determination of claims under the Texas Tort Claims Act. In
Huong, 961 F. Supp. at 1005, the defendant police officer, when faced with imminent
threat of bodily harm or death, deliberately shot and killed the plaintiffs' decedent with his
service pistol. The court found that, although the plaintiffs attempted to bring a claim for
"negligence" arising from the alleged conduct of the officer, they described their claims
arising from the shooting as the intentional tort of excessive force. Id. at 1008 (citing Little
v. Schafer, 319 F. Supp. 190, 192 (S.D. Tex. 1970) (holding where essence of claim under
Tort Claims Act arises from intentional torts, allegations of negligence are insufficient to
avoid Section 101.057 exception to liability); City of San Antonio v. Dunn, 796 S.W.2d 258,
261 (Tex. App.—San Antonio 1990, writ denied) (holding there was no waiver of municipal
immunity under the Tort Claims Act where claims arose out of intentional torts of excessive
force and false arrest)). The court found that the plaintiffs could not circumvent the
intentional tort exception to waiver of municipal liability by simply pleading negligence,
when the shooting event on which they based their claim was actually an intentional tort. 
Id. at 1009. The court therefore found that the officer's alleged intentional act of shooting
the decedent was a claim for the intentional tort of excessive force. Whether the officer
intended to injure the decedent was not analyzed. The court in Hucker v. City of
Beaumont, 144 F. Supp. 2d 696, 707–08 (E.D. Tex. 2001), however, analyzed the Huong
opinion to mean the officer had intended to shoot the decedent and intended to employ
deadly force in doing so. The Hucker court found that the act of the officer in Huong
accomplished the officer's intent and there was no negligence in achieving that intent. Id. 
          The cases cited by Winnsboro focus on whether the state actor intended his actions. 
There is little analysis given on whether the actor allegedly intended to cause injury. In
most of these cases, the intent to injure can be inferred from the actors' conduct, i.e.,
committing a rape or physically beating someone. The cases cited by the Durbins, on the
other hand, focus on the actors' intent to cause injury. Therefore, they suggest that, even
if the actor intended his actions, if he did not intend the injury, it is not a claim for an
intentional tort. 
          We adopt the analysis of the Reed Tool and Bridges courts of what constitutes an
intentional tort under the Tort Claims Act: that the fundamental difference between a
negligence cause of action and an intentional tort is not whether the defendant intended
his or her acts, but whether the defendant intended the resulting injury. Reed Tool Co.,
689 S.W.2d at 406; Bridges, 20 S.W.3d at 114. The Durbins alleged in their petition
Browning was negligent, careless, and reckless in failing to use reasonable care in
operating and using the patrol car. They allege he so acted by failing to avoid Jimmy,
driving too fast, and purposefully striking the motorcycle. They do not allege, and no
summary judgment evidence shows, that Browning intended to injure or kill Jimmy. 
          The cases cited by Winnsboro do not provide any determination or analysis on
whether an actor must intend the injury for the intentional tort exception to apply. In the
majority of those cases, the intent to injure can be inferred from the acts alleged, e.g., a
rape or a physical beating. No such intent can be inferred from the pleadings in this case. 
The Durbins allege Browning purposefully bumped Jimmy's motorcycle to end the pursuit. 
There were no allegations that Browning intended to cause any injury by his actions, only
that he intended to end the pursuit. The Durbins' claims against Winnsboro arising from
the act of Browning "bumping" Jimmy's motorcycle are not claims for an intentional tort and
are, therefore, not barred by the Tort Claims Act.  
Negligent Entrustment 
          The Durbins also alleged in their petition that Winnsboro was the owner of the
vehicle operated by Browning and that Winnsboro negligently entrusted that vehicle to a
reckless and incompetent driver. 
          On appeal, the Durbins make no mention of this theory of liability, but focus on the
inapplicability of the intentional tort exception in Section 101.057. We therefore assume
the Durbins have abandoned that theory of liability, as it is not supported by any argument
on appeal. See May v. Nacogdoches Mem'l Hosp., 61 S.W.3d 623, 631 n.13 (Tex.
App.—Tyler 2001, no pet.). 
          Further, we have previously held that a claim for negligent entrustment does not
state a cause of action under the Tort Claims Act. Tex. Dep't of Criminal Justice v. Lone
Star Gas Co., 978 S.W.2d 176, 178 (Tex. App.—Texarkana 1998, no pet.) (citing Waldon
v. City of Longview, 855 S.W.2d 875, 880 (Tex. App.—Tyler 1993, no writ)).
          The trial court therefore did not err in granting Winnsboro's motion for summary
judgment in regard to the Durbins' claims for negligent entrustment. 
Exemplary Damages
          The Durbins also pursued exemplary damages against Winnsboro. The Tort Claims
Act does not authorize exemplary damages. See Tex. Civ. Prac. & Rem. Code Ann.
§ 101.024. When a governmental unit is engaged in a proprietary function, however, that
entity may be found liable for exemplary damages on a showing of "intentional, willful, or
grossly negligent conduct which . . . can be imputed directly to the governing body of the
[governmental unit]." City of Gladewater v. Pike, 727 S.W.2d 514, 519–22 (Tex. 1987);
see also Thompson v. City of Corsicana Hous. Auth., 57 S.W.3d 547, 559 (Tex.
App.—Waco 2001, no pet.). Nonetheless, Section 101.0215 expressly provides that
"police and fire protection and control" are governmental functions, not proprietary ones. 
Tex. Civ. Prac. & Rem. Code Ann. § 101.0215. Therefore, a plaintiff cannot recover
exemplary damages from a municipality for its governmental function in providing police
protection. 
          The trial court did not err in granting Winnsboro's motion for summary judgment on
the Durbins' claim for exemplary damages. 
Conclusion
          The Durbins' claims against Winnsboro under respondeat superior for the
negligence of Browning are not barred by the intentional tort exception to the Tort Claims
Act. The trial court therefore erred in sustaining Winnsboro's plea to the jurisdiction, and
we reverse that ruling. We also reverse the summary judgment against the Durbins on
their claims against Winnsboro under respondeat superior. Because of this disposition,
it is not necessary that we address the Durbins' contention that they should have been
allowed to amend their pleadings. 
          The Durbins' claims for negligent entrustment and exemplary damages are barred
by the Texas Tort Claims Act. We therefore affirm the trial court's granting of summary
judgment on those claims. 
          For the reasons stated, we affirm in part and reverse in part, and remand this case
to the trial court for further proceedings consistent with this opinion.


                                                                           Donald R. Ross
                                                                           Justice 
    
Date Submitted:      March 31, 2004
Date Decided:         April 29, 2004